## Stephens *against* Wells.

A payment of taxes upon unseated land, must be applied to the discharge of the tax due upon the tract upon which the payment was actually made; and the intention and belief of the person paying, that he was discharging the taxes due upon a different tract, cannot be so used as to avoid a treasurer's sale of the latter for the payment of the taxes.

ERROR to the common pleas of *Bradford* county.

This was an action of ejectment for a tract of land, by James Stephens and others against Chester Wells.

*Williston,* for plaintiff in error.
*Conyngham,* for defendant in error.

The evidence given on the trial of the cause was so voluminous, and the points to which it gave rise so unimportant, that it is not deemed proper to make any other report of it, than that contained in the opinion of the Court delivered by

KENNEDY, J.—The first error is an exception to the affirmative

[Stephens v. Wells.]

answer of the court below, given to the jury on the first point submitted by the counsel of the plaintiff there, who is the defendant here: "That if the jury believed the old line sworn to by Olmstead and Sturdivant, was the north line or boundary of the survey of the Aaron Guinip tract, (meaning the tract of land originally surveyed under a warrant granted by the state to Aaron Guinip, and purchased by Wells, the plaintiff below, at a sale made thereof, under a warrant from the commissioners of the county, for taxes assessed upon it as unseated) and that the east and west lines or boundaries of said survey, were also found upon the ground, then that the claim under the said Guinip survey, would *extend between* the said east and west lines or boundaries forty-five rods, (which was the whole length of these lines according to the survey, as returned into the surveyor-general's office) south of said old line, without regard to quantity of the Henry Mason, (meaning the land surveyed under a warrant granted to Henry Mason, under which the defendants below, now plaintiffs in error, claim the land in dispute) and others, whether the south line of said Guinip survey was run upon the ground or not." In this direction to the jury, we think, there is no error; because, if, from the evidence, it appeared to the jury, that the southern boundary of the Guinip survey never had been run and marked on the ground; nor any marks made thereon, limiting the east and west lines to points short of that distance, by which the southern extremities could be discovered with reasonable certainty, the Guinip survey being some days older than the Henry Mason survey, was entitled to a preference, and to have the east and west boundaries thereof, extended southwardly forty-five perches, this being the distance of each, as described in the return of survey made in pursuance of the warrant by the deputy surveyor, into the surveyor-general's office. Had it appeared from the evidence, that there were marks on the ground, which might have been fairly considered as the termini of these east and west lines, at a shorter distance than the forty-five perches, then it would, doubtless, have been proper to have submitted it to the jury as a question of fact, to be decided by them, whether such marks were the termination of these lines or not; but in the absence of all evidence tending to prove any thing of this kind, the distance called for in the return of survey was the only guide by which the jury could, or ought to have been governed. It was, therefore, perfectly correct in the court to instruct them to this effect, as it appears they did. And whether the southern boundary, it being the closing line, most likely, of the survey, was actually run or not, the survey is good, or at least not bad on that account; and whether run or not, as long as there was no evidence showing positively where it had been run, if ever, beside that of the courses and distances called for in the return of the survey, it could make no difference as to the conclusion, which the jury were bound in law to draw, whether it had been run or

not, seeing it was not marked differently from the courses and distances called for in the survey as returned.

The second error is an exception to the answer given by the court instructing the jury on the second point submitted by the plaintiffs' counsel below, which was, " That if the jury should believe that the Guinip survey was located south of the old line, then the purchase by Goodyear (a person through whom the plaintiffs in error claim) of the Henry Mason tract, would only vest in Goodyear the right to the land within the original Mason lines, lying south of such location of the Guinip survey; and that the payment of taxes by Goodyear subsequently upon the tract, in the name of the Henry Mason warrant, without any actual possession upon the land, would apply only to the land purchased by him, and could not be construed or applied so as to defeat the title of the plaintiff below, to the land within the Guinip survey purchased by him at the treasurer's sale." It is difficult here to discover even a colourable ground for exception to the correctness of the proposition contained in this point: for nothing can be more clear, than that whatever land was actually embraced within the Guinip survey, was sold by the treasurer on account of taxes assessed thereon, which remained unpaid at the time; and that the plaintiff below became the purchaser of it, let it be located where it might, so it were not altogether different from, and repugnant to the description of the location thereof, as set forth in the assessment; and that the purchase by Goodyear of the land included within the Mason survey, without his taking actual possession of any land in virtue of such purchase, could not entitle him, or those claiming under him, to have the taxes assessed on the tract surveyed under the Mason warrant and paid by him, applied to any other land than that actually contained within the Mason survey, is a proposition too plain to admit a doubt or even explanation. The circumstance of Goodyear's having been impressed with a conviction, at the time the taxes were assessed, which purported to be assessed on the Mason tract, as also when he paid them, that the land in dispute was included in the Mason survey, but now found to be contained in the Guinip survey, and not in the Mason survey; can neither give direction to, nor change the application of the payment of the money made by him, so as to appropriate it to any other land, than that which is found to be within the original Mason survey. If it were to be held otherwise, the effect of it, would be, that neither the Guinip nor Mason tract could have been sold for taxes, though both were unseated, and taxes assessed on each, but paid only on one of them: because it would have appeared on the commissioners' books, that the taxes assessed on the Mason tract had been fully paid by Goodyear, which would most clearly have avoided the sale of it, had any been made on such account: and because, as is now contended, Mr Goodyear thought, the land included within the Guinip survey, was the land embraced

by the Mason survey, when he paid the taxes assessed thereon, which turns out not to be the case, the sale of the Guinip tract, on which, as such, no taxes were paid anterior thereto, is also to be rendered void.  Nor can it make any difference, that this mistake on the part of Goodyear was occasioned by the error of the deputy surveyor of the county, who at the request, as it would seem of Goodyear himself, claiming at the time to be the owner of the Mason tract, and wishing, probably, to ascertain the true location of it according to its original survey, fixed it on the land in dispute, which the jury must have thought was a mislocation of it. This act of the deputy surveyor, was no *re-survey* as it has been called; he had no authority from the state for making it, and it can not be regarded as having any other effect or character, than if it had been done by any other individual on the simple request of Goodyear himself.  It was an unofficial act, and nobody was bound to take notice of, or regard it: neither was it done by him under any authority from the commissioners of the county, with a view to making future assessments of taxes thereon, and therefore, it would seem to be impossible, even by the utmost stretch of ingenuity itself, to connect this re-survey, as it is called, with the taxes assessed on the Mason tract, and in that name.  The assessment then of the land under the name of Mason the warrantee, must necessarily be considered as applicable to the land, and that alone, actually contained within the original survey made and returned into the surveyor-general's office, under the warrant granted to Mason.  The charge of the court below, on this second point of the plaintiff was therefore right.

The third error assigned is that the court did not answer the third and fourth points propounded to them, by the counsel for the plaintiff below.  The counsel for the plaintiff below, alleges that the affirmative answers of the court to his first and second points rendered an answer to his third point, unnecessary; and he, therefore, waived it, which is the reason no answer was given to it by the court.  This he undoubtedly might do; *quilibet renunciare potest juri pro se introducto;* and if the counsel for the defendants below had thought it material to the interest of his clients, to have had an answer from the court to it, he should either have required it of the court or have submitted a point on his part to the same effect, praying an answer to it.  Indeed it would rather appear from the purport of the first point submitted by the counsel for the defendants below, as if he intended by it to draw from the court the same direction to the jury, which would have been a complete answer to the plaintiffs' third point, so that there is no pretence for complaint that no answer was given to the plaintiffs' third point, because the defendants below received it in answer to their first point.  But it is certainly true, as the counsel for the plaintiffs below says, that the answer given by the court to his second point, seemed to supersede the necessity of returning one

[Stephens v. Wells.]

to his third; as also, perhaps, to the first and second points of the defendants below.

Then as to the fourth point of the plaintiff below, without admitting for a moment, that the plaintiffs in error have a right to complain that it was not answered, or that they can assign it for error, it is sufficient to say that they did obtain a full answer to it in the answer of the court to their third point; which they have assigned for error also, and if sustainable, will entitle them to relief by a reversal of the judgment rendered against them.

The fourth error is an exception to the answers given by the court to the first and second points submitted by the counsel for the defendants below, to the court for their instruction on them to the jury. By their first point, the counsel for the defendants below, requested the court to charge the jury, " that if they believed that Thaddeus Goodyear, in the year 1812, caused a resurvey to be made of the tract, in the name of the Henry Mason warrant, *covering* the *land* now in *controversy*, and that Goodyear and those claiming under him had paid the taxes on *that* land, then the plaintiff could not recover." In answer to this point, the court said, " this is correct, if the taxes were *actually paid on the land in question.*" We are unable to discover any reason why the defendants below should complain of this answer. If any one had cause for objection to it at the time it was given, it would rather seem to have been the plaintiff below than the defendants. For the jury, from the generality of the answer, might possibly have been led to believe, that if Goodyear and those claiming under him, *conceived merely*, when they paid the taxes assessed on the land in the name of Henry Mason, that they were actually paying the taxes assessed on the land in controversy, because it was embraced within the resurvey, as it has been improperly called, though it should appear to the jury, that in point of fact, the original survey, under the Mason warrant, did not embrace it, then the plaintiff below ought not to recover. This, as has been shown above, would have been clearly wrong. The resurvey here spoken of, as has also been shown above, was not to be regarded and could have no effect whatever in either giving or defeating any rights that the parties respectively would otherwise have to claim the land in question.

Then, as to the second point of the defendants below; the court were thereby requested to instruct the jury, " that if they believed that Thaddeus Goodyear, and those claiming under him, paid the taxes on all the land in controversy, under the warrant in the name of Henry Mason, then no part of the land could be sold in another warrantee name, as that of Aaron Guinip, and the plaintiff below could not recover." The court replied, " This is correct, if the taxes were actually paid on the land in question." Now it is impossible to make any thing out of this answer, but an instruction to the jury in direct conformity to the request of the counsel for

VI.—2 R

[Stephens v. Wells.]

the defendants below. And why they should complain of it as error, I am altogether at a loss to imagine. If the verdict of the jury had afterwards been given in their favour, I am not sure, that the plaintiff below would not have had just cause of complaint. For the instruction so given might have been thought to have included within it, the proposition, that if the jury should believe that the original survey, under the Mason warrant, included the land in dispute, and that the taxes assessed on it, in the name of Mason, were all paid, then the plaintiff below could not recover, though the Guinip survey also included it, and the taxes assessed on it, in that name, remained unpaid, until satisfied by the sale to the plaintiff. Now these two warrants being of the same date and alike descriptive of the land in dispute, but the Guinip survey being made some days before the Mason survey, gave the owner of the Guinip warrant a right to the land included within it, and the survey made afterwards, under the Mason warrant, so far as it embraced land included in the Guinip survey was invalid, and could not be considered otherwise than as void against it. But it is perfectly clear, that the assessors and commissioners of the county considered the lands surveyed under these two warrants, as two distinct, separate tracts, and as such, they assessed them. Then is it certain, that, because the owner of the warrant, who acquired no right to the land surveyed under it, has paid the taxes assessed in the name of his warrantee, that the owner of the land will thereby be exempted from the payment of the taxes expressly assessed in the name of the warrantee, under which he holds the land, and that a sale thereof, under a warrant from the commissioners of the county, on account of the nonpayment of such taxes, would be void? It may be, if the owners of the land in such case, were to apply to the commissioners before the sale and satisfy them that the same land had been assessed twice, and that one of the assessments had been paid by the person claiming the land under the defective title, that they would not go on to sell, but credit him with the taxes, as having been paid on the assessment under the defective title; or possibly if the owner were to appear at the time of sale, and give notice to the bidders, of the circumstances, attending the assessments and of the payment of one of them, and, therefore, not to buy, it might avail him; but if nothing of this kind be done by him, and he lies by and suffers the land to be sold and paid for, by an innocent purchaser, it may be that he would lose his right to the land, unless he were to redeem it within the time allowed for that purpose. Although a purchaser of land generally is bound, at his peril, to know beforehand, or at the time, whether it is held under a warrant and survey, preferable to that under which he is buying; yet it does not follow, that he is bound or will be presumed to know, whether it is included within, and claimed under a warrant and survey, that is unavailable, as against that under which he is about purchasing. The question, however,

[Stephens v. Wells.]

involving these matters, does not arise in the case before us, and as it may be thought by some to be of serious import, we do not think it advisable to express any opinion in regard to it.

The fifth, and last error, is an exception to the opinion of the court, given in their answer to the third point of the defendants below. By this the counsel for the defendants requested the court to instruct the jury, that, as " the evidence showed that the land was sold for 1 dollar 30 cents more than the amount of the taxes and costs, due at the time of sale, and the plaintiff not having shown any surplus bond to have been executed by him, therefore, he could not recover." The court answered, " This is correct; but if the jury believe the land was sold for taxes and costs, and that the treasurer made a mistake in calculating what they amounted to, then it would be otherwise." By the evidence to which the counsel here have a reference, it appears that, at the time of the sale, according to the statement then made by the treasurer of the amount of the taxes and costs due, there was no surplus; that the sum bidden by the purchaser was precisely the amount of the taxes and costs which were then supposed and stated by the treasurer to be due on the land; and that this sum was accordingly paid by the plaintiff below as the purchaser thereof. This being the case, it cannot be doubted, but the court was right in directing the jury on this point as they did. The purchaser could not know the amount of the taxes and costs due upon the land, but as he was informed by the treasurer. The trust in regard to this was confided to the treasurer; his statement, therefore, was very properly acted on and considered by the purchaser as correct; and it would be unreasonable, as well as unjust, to make the purchaser responsible for the errors or mistakes of the treasurer in this respect.

Judgment affirmed.