M. C. DUTTON v. OSCAR THOMPSON.

No. 7353.

1. **Limitation may run Before Patent for the Land.** — Land was bought from the State in 1877. It was patented in 1889. In such case, as the purchaser could maintain trespass to try title for the land upon his contract with the State, the statute of limitations would run against such purchaser in favor of one in adverse possession before the patent issued for the land.

2. **Payment of Taxes Under Defense of Five Years Limitation.** While payment of taxes may be proven by direct or circumstantial evidence, and while parol testimony to such payment is competent, still where the land is incorrectly listed upon the tax rolls the parol testimony to payment will be evidence of payment upon the lands assessed. The tax payer can not apply such payment to lands not listed, although the land was listed erroneously by mistake. See facts.

3. **Costs in Trespass to Try Title.** — In an action of trespass to try title, where the defendant litigates the title to the whole or to part of the land, in the event the plaintiff recovers any part of the land so litigated, he is entitled to recover costs.

APPEAL from McCulloch. Tried below before Hon. J. W. TIMMINS.

*J. E. Thomas* and *J. E. McConnel*, for appellant.—1. The statute of limitation does not run against the State, nor against any party claiming land under the State by virtue of an executory contract, until the contract is performed and patent is issued to the claimant. Rev. Stats., art. 3200; Truchart v. Babcock, 49 Texas, 249; Smith v. Power, 23 Texas, 29.

2. Plaintiff having purchased the land from the State of Texas, the title remained in the State until the purchase money was paid in full and

the State relieved of its character as vendor, prior to which time the statute of limitation is not available to defendant.    Rev. Stats., art. 3200; Truehart v. Babcock, 49 Texas, 258; Smith v. Power, 23 Texas, 29; Sedg. & Wait on Trial of Title to Land, sec. 308.

3.  The sale of land by the State for the public free school fund is an executory contract between the State and the vendee, the State being trustee for the school fund, and as such the statute of limitation does not run against the State.    Const., art. 7, sec. 6; Sedg. & Wait on Trial of Title to Land, sec. 309; Sellcon v. Hayes, 17 Ala., 749.

4.  The defendant in an action of trespass to try title, claiming under the statute of five years, is not entitled to recover without having paid taxes on said real estate.    Rev. Stats., art. 3193; Murphy v. Welder, 58 Texas, 235; Kelly v. Medlin, 26 Texas, 49.

*Walter Anderson, Warren W. Moore,* and *A. S. Burleson,* for appellee.

1.  J. A. Brooke, and appellant as assignee of Brooke at the date of purchase from the State, acquired title to the land, subject only to forfeiture by the State for nonpayment of purchase money, and right of action against a trespasser accrued at the date of the purchase; and limitations would run against the owner of said equitable title in favor of appellee, notwithstanding the patent had not issued.  Sulphen v. Norris, 44 Texas, 245; Sherwood v. Fleming, 25 Texas Supp., 408; Wright v. Hawkins, 28 Texas, 471; Udell v. Peak, 70 Texas, 552.

2.  Appellee was in possession; paid all the taxes due on said land for five years next preceding the institution of suit against him, and the method of assessment is immaterial.   Appellant could not be misled into the belief that appellee held in subordination to her claim.   Cantagrel v. Von Lupin, 58 Texas, 577; Cannon v. Hemphill, 7 Texas, 184; Payne v. Benham, 16 Texas, 364; Wheatley v. Griffin, 60 Texas, 209.

STAYTON, CHIEF JUSTICE. — This action was brought by appellant to recover the southeast quarter of alternate section number 182, State school lands, patented to her on November 26, 1889, as assignee of J. A. Brooke, who contracted with the State for the land on February 26, 1877.

Appellee disclaimed all interest in the land sued for, except two small tracts, which he described by metes and bounds, and as to them he pleaded "not guilty," asserted title under the statutes of limitation based on five and ten years possession, and he also asserted claim for improvements made on these tracts in good faith.

One of the tracts to which appellee asserted title contained 9.733 and the other 27 acres; but on hearing judgment was rendered in favor of appellant for all the land sued for except the tract containing 9.733 acres, which the court evidently held appellee was entitled to hold under

his plea of statute of limitation based on adverse possession under re-corded deed and the payment of taxes.

It is claimed on this appeal that limitation would not run in favor of appellee until the patent issued; but appellant, and the person through when she acquired the right to a patent, had such interest in the land as would have entitled either of them to have maintained an action of tres-pass to try title to the land against any person entering upon it during the time of their respective ownerships, and we see no reason why limitation would not run against a person having such interest in land, although the State could not be thus barred.

This was the holding in reference to University lands in the case of Parker v. Brown, 80 Texas, 557.

It is urged further, that the evidence was insufficient to prove the pay-ment of taxes by appellee on the land adjudged to him, and that for this reason the judgment in his favor, based on five years adverse possession, was not authorized.

Appellee, as a witness, made the broad statement that he entered upon the land in October, 1882, and that he continuously occupied the tract claimed by him from that time until the trial, and that he " paid all the taxes thereon up to and including 1888;" " that he has paid taxes on other lands;" but it was agreed by the parties, " that the assessment list, as rendered by defendant, shows that he rendered 9¾ acres of section 180 in name of M. C. Dutton, and that the tax rolls for 1884, 1885, 1886, and 1887 show the same; that the section number and abstract number of said section 180 are different from section 182, upon which the land in controvesy is situated."

This is all the evidence bearing on the payment of taxes, except that it was agreed that the person under whom appellee claimed paid taxes in the years 1881 and 1882.

This evidence shows that appellee may have intended to pay taxes on the 9¾ acres claimed by him, but does it show that he paid taxes on the land which was adjudged to him ?

With a view to secure the payment of taxes on all lands within the State subject to taxation, the Legislature has passed laws requiring the Commissioner of the General Land Office to furnish each assessor with an abstract of all the surveys of land, and number of acres therein, in their respective counties, and with reference to this assessments are required to be made.   Rev. Stats., art. 4710a, sec. 1.

By another law the Commissioners Court of each county is required to provide its assessor with books containing certain forms, in which, when an assessment or listing is made, the assessor is required to enter in the proper column the district number, name of party to whom the certificate issued, the number, class, and character of the certificate, the name of the party to whom the patent issued, number of volume of patent, the month,

day, and year it was issued, and the number of acres each survey contains, which whole survey shall stand as a debit against the assessor. Rev. Stats., arts. 4710a (sec. 2), 4710a (sec. 7).

Every person rendering a list of property for taxation is required to "subscribe to the following oath or affirmation, which shall be written or printed at the bottom of each inventory, to-wit: 'I do solemnly swear (or affirm) that the above inventory rendered by me contains a full, true, and complete list of all taxable property owned or held by me in my own name in this county, subject to taxation by the laws of this State,'" etc. (Revised Statutes, article 4702); and the inventory therein referred to is required to give the name of the owner, abstract number, number of survey, name of original grantee, and the number of the certificate, as well as the number of acres claimed. Rev. Stats., arts. 4680, 4681.

The purpose of these laws is manifest, and ought a person who has made a rendition of his property, presumably under oath, to be heard to say that he paid taxes on property in a given year, and then claimed it under a deed duly recorded, when his rendition shows that for tax paying purposes he made no such claim?

Ought it not rather be held that he paid taxes on what he listed, though it may have been his intention to pay taxes on some other land?

If he had offered his tax receipts, they evidently would have shown that he paid taxes only on the land he rendered for taxation; for the tax roll, which is but a transcript of renditions, is the officer's warrant to collect taxes, and his receipt must, and will if it be true, describe the property on which taxes are paid as the same is described in the tax roll. Rev. Stats., arts. 4737, 4741.

If under the renditions made by appellee, the collector of taxes had seized and sold any property of his to enforce the payment of taxes on the land in controversy, the sale would have been void, because the officer would have been without authority on rendition of property as a part of section 180, to sell the property of appellee to satisfy taxes due on a part of section 182.

Mere intention to pay taxes on the land in controversy can not make that such a payment which was not so in fact, when tested by his rendition made by appellee.

Questions similar to that involved in this case have arisen in other cases. In Stephens v. Wells, 6 Watts, 325, a party sought to have an assessment and payment of taxes on a tract of land designated in the assessment as a part of the "Mason survey," appropriated to a tract of land actually on the "Guinip survey," upon the ground that he believed the land to be on the former survey at the time of assessment and payment; but the court said, "The circumstance of Goodyear's having been impressed with a conviction at the time the taxes were assessed, which purported to be assessed on the Mason tract, as also when he paid them,

that the land in dispute was included in the Mason survey, but now found to be contained in the Guinip survey, and not in the Mason survey, can neither give direction to nor change the application of the payment of the money made by him, so as to appropriate it to any other land than that which is found to be within the original Mason survey. * * * The assessment then of the land under the name of Mason, the warrantee, must necessarily be considered as applicable to the land, and that alone, actually contained within the original survey made and returned into the surveyor-general's office under the warrant granted to Mason.''

In Rollinger v. Devling, 105 Pennsylvania State, 417, a similar question arose in reference to the redemption of land after sale for taxes, and the court said: '' Even if it be conceded that there was an intention to redeem the Meyor tract, it is absolutely certain that no such intention was expressed, and it surely would never do for us to declare as the law, that an unexpressed intention to redeem one tract should be permitted to confer a title by redemption against an actually expressed intention to redeem another tract by the same redemption payment.''

'' It is not sufficient, against a receipt specifying particular lands, to say that the defendant did not own some of the lands included, and meant to pay only on what he owned, and that he did own other tracts which were assessed in his name. It is the duty of the tax payer himself to appropriate in some manner the money paid to the particular land he wishes to clear.'' Hickman v. Kempner, 35 Ark., 510.

Appellee's statement, that he paid the taxes on the land for the years enumerated, in view of his rendition, amounts to no more than an expression of an intention to pay on the land, and this can not override the conceded fact that his rendition did not cover the land in controversy, and the further fact that the tax roll was the collector's warrant for demanding and receiving taxes.

That paid must be held to have been paid under the assessment, in the absence of evidence other than such as appears in the record.

It is not very clear why the Legislature made the payment of taxes necessary in order to sustain the defense of limitation based on five years adverse possession under a recorded deed.

It may have been, to this extent, to require evidence of good faith on the part of the occupant, to secure to the State and its municipal subdivisions the payment of taxes due on the land, or to give further notice of the adverse claim and of the time it would mature into title, if possession be not interrupted, than afforded even by adverse possession under a recorded deed. If the latter be the reason, then there would be the strongest reasons for holding that the assessment, a public instrument, should show that claim to the particular land was thus made by the occupant or person for whom he may hold.

In Cantagrel v. Von Lupin, 58 Texas, 577, it was said, that the stat-

ute did not require a person claiming land under limitation based on five years adverse possession to show an assessment of the property in his own name, and that proof of payment of taxes was enough; but in that case the assessment was in the name of the vendor of the person who pleaded limitation.

It is not necessary in this case for us to decide upon what reason the statute rests, nor as to the necessity for an assessment, for these questions are not involved in this case; nor do we wish to be understood to intimate an opinion upon these questions, for the question in this case is, did appellee prove the payment of taxes on the land in controversy for the requisite period?

That the payment of taxes may be proved by testimony either direct or circumstantial, has been often held by this court; but there is no testimony of either character in the transcript sufficient to show that appellee, or any person under whom he holds, paid taxes on the land in controversy for the requisite period.

The court below did not adjust the question of costs between appellant and appellee, but simply directed that executions might issue in favor of the officers of court against each party for costs incurred by them respectively; but no objection was made to this in the District Court, and were this the only error in the judgment, under the circumstances, appellant might not be entitled to a reversal, although the ruling of the court in not awarding costs to appellant is assigned as error.

In view, however, of another trial, we deem it proper to say, that if plaintiff recovers any of the land to which defendant asserts title, then she will be entitled to recover costs.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 3, 1892.