## AMMERMAN et al. v. BOURLAND et al.
### (No. 1211.)

(Court of Civil Appeals of Texas. El Paso. April 28, 1921.)

**1. Adverse possession ⟾95—Plaintiffs suing in trespass to try title and claiming under prescription of five years must show incorporation of school district and levy of taxes.**

In an action of trespass to try title, plaintiffs claiming that they had paid taxes which was admitted except that the school tax collector testified that another rendered the north half of the north half of the land for two years and paid the taxes for such years, it should appear, for plaintiffs to substantiate their claim of prescription under the five-year statute, that the school district has incorporated as such, and that levies and taxes were made by it for the series of years involved.

**2. Evidence ⟾25(2)—Court cannot take judicial notice of facts town or school district is incorporated and has levied taxes.**

The Court of Civil Appeals cannot take judicial notice of the fact that a town is incorporated and has levied taxes, or that a school district has incorporated as an independent district and has levied taxes.

**3. Adverse possession ⟾90—Five-year statute does not require that claimant of title to land make rendition for taxes.**

The five-year statute of limitations does not require that claimant of title to land under it make a rendition of the property for taxes, but merely demands the payment of such taxes as may be due.

**4. Adverse possession ⟾82—Successive deeds of possessors need not be recorded.**

It was not necessary to claim title to land by prescription under the five-year statute that each deed in succession from the first possessor should have been recorded; the statute requiring only that each claimant in succession shall hold and claim under a duly recorded deed, and that the title conveyed by the deed is in fact for the benefit of claimant.

**5. Adverse possession ⟾110(3)—Petition sufficient to apprise defendants plaintiffs claimed privity of estate between selves and grantors.**

In trespass to try title, petition pleading the five-year statute of limitations held sufficient to apprise defendants that plaintiffs claimed a privity of estate between themselves and their grantors, so that testimony of such grantors as to the possession of each under their deeds was admissible.

---

⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Adverse possession ⬤⇨95—Burden on plaintiffs claiming under five-year statute to show payment of all taxes due.**

The burden of proof is on plaintiffs claiming in trespass to try title under the five-year statute of limitations affirmatively to show payment of all taxes due, if any, during the full period of five years.

**7. Adverse possession ⬤⇨95—Evidence sufficient to show payment of taxes by plaintiffs under five-year statute.**

In trespass to try title by plaintiffs claiming under the five-year statute of limitations, evidence *held* sufficient to show payment of taxes by plaintiffs under such statute.

**8. Appeal and error ⬤⇨1050(2)—Admission of deeds in trespass to try title not prejudicial to defendants.**

In trespass to try title by plaintiffs claiming under the five-year statute of limitations, admission in evidence of deeds from parties who owned the land previously, under whom plaintiffs' grantor deraigned title, *held* not prejudicial to defendants.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by L. E. Bourland and others against J. B. Ammerman and others. From judgment for plaintiffs, defendants appeal. Affirmed.

H. E. Pratt, of Eastland, for appellants.

Allen D. Dabney, of Eastland, for appellees.

WALTHALL, J. This is an action of trespass to try title, which was brought by appellee, L. E. Bourland, against J. B. Ammerman, C. U. Connellee, Mrs. Maggie Daugherty, the unknown heirs of J. S. Daugherty, deceased, and the unknown heirs of the unknown heirs of J. S. Daugherty, A. D. Irvin and wife, S. H. Irvin, and the unknown heirs of A. D. Irvin and wife, and the unknown heirs of the unknown heirs of said A. D. Irvin and wife, on December 4, 1919, to try title to a block of land described as –D–3 situated in the town of Eastland, Eastland county.

M. B. Burgamy filed a plea of intervention claiming ownership to the west half of said block of land. There is no controversy between Bourland and Burgamy suggested by the record. We will designate the parties as appellants and appellees.

The pleadings of appellees set up title and claim to the above-described premises under the three, five, and ten year statutes of limitation. Citations as to some of the appellants were served by publication, and, on failure to answer, an attorney was appointed to represent them.

Appellants answered by general denial, not guilty, and affirmatively pleaded ownership and right of possession in themselves, and prayed for judgment for title and possession.

An agreement was entered into by and between all parties to the suit, the second subdivision of the agreement reading:

"(2) That the fee-simple legal title to the property in controversy herein, duly and regularly vested in the defendant J. B. Ammerman on the 7th day of December, 1876, by a deed of that date from one Jackson Rust, who at that time was the owner in fee simple of the said premises, legally and equitably, by virtue of a patent to the same from the state of Texas, and that said Ammerman took said title for himself and defendants Connellee and J. S. Daugherty, deceased, mentioned in plaintiff's petition, each owning an undivided one-third interest therein."

The case was tried with a jury, and the issues of the statute of limitation of three, five, and ten years were submitted under special issues. The jury found for appellees under the three, five, and ten year statutes of limitations. Judgment was rendered for appellees.

Appellants filed a motion for a directed verdict in their favor, which motion the court overruled. The first assignment claims error in the court's refusal to direct the verdict as requested. Under their first assignment the appellants present eight propositions calling in question the sufficiency of the evidence to sustain the several findings and the judgment.

We find no deed in the record conveying the title to the land in controversy from appellants. So far as the record shows, the record title to the land in controversy is in appellants, except as same may be shown to be in appellees under the five and ten year statutes of limitations; appellees not showing a consecutive chain of title in themselves from the state to sustain the three year statute of limitations, nor in any way showing title in themselves from appellants. We think the first deed necessary to be noticed, and under which evidence as to possession and the payment of taxes was offered, begins with the warranty deed from B. F. Mays and wife, of date July 13, 1907, and filed for record July 16, 1907, to Paul Chastain and wife, conveying a part of block –D–3 (called in some of the deeds minus D minus 3), and by metes and bounds conveying 109x118 feet out of the northwest corner of block –D–3. Mays built a house on the property. Chastain moved on the property immediately after he purchased it. The property was then fenced, a barn on the west end and the house on the east end, chicken and stock lots also on the property. Chastain placed a curb and curbstones on the east and north sides. Chastain occupied the premises during the period of his ownership. Chastain used, for one purpose or another, the entire property. He delivered possession of the property over to Mr. Garrett simultaneously upon delivery of

the deed conveying to Garrett. Chastain's possession was not disturbed in any way while he owned the property. He heard of no adverse claimant. We might add here that the record shows a deed also to Chastain from W. H. Day and wife of date November 2, 1907, and filed for record November 18, 1907, but neither under that deed nor the Mays deed is his title deraigned from the state or from appellants. Chastain testified:

"I paid the taxes on this property during the time I owned it, and I always paid them before they were due."

There is no evidence other than the above of his having paid the taxes.

On May 1, 1915, Chastain and wife by warranty deed conveyed to Clyde L. Garrett. The deed was filed for record May 22, 1915, and recorded, the date of the record not shown. Garrett went into possession after buying, but the exact time of his entry is not stated. Witness Garrett thought it was not over a month or two. The property was then inclosed by a fence. A dwelling house was on the property. Garrett removed the fence from around the house, but left the other portion of the property fenced. Garrett was not disturbed in his possession and never heard his title questioned. He said:

"I paid the taxes on this property while I owned it. * * * The taxes were never delinquent during the time I lived on the property. I paid the taxes on the property I lived on, but I couldn't swear as to the lot and block. I took a receipt for the taxes, and I took it that it was correct. I thought that the property I lived on was rendered. I tried to render it. I couldn't swear that I did render it. As to the place shown me here (referring to a diagram agreed to properly represent the property in the block), the strip indicated to me looks like the strip I owned. That is the strip that was under fence all the time I had the property."

Garrett and wife, by warranty deed conveyed to J. S. Hart on May 16, 1916. The deed was filed for record July 27, 1916, and recorded, the date of record not given. After conveying to Hart Garrett remained on the premises as a tenant of Hart for several months, time not definite. Miss May Harrison occupied the premises as tenant after Garrett, but time when she entered and when she ceased to occupy not made definite. Hart never lived on the property in person. The house was on the property and the property fenced during the time Hart owned it. His possession was peaceable; no one questioned his right of possession. Heard of no adverse claimant. Hart said: "I paid the taxes on the property."

Hart and wife conveyed by warranty deed to M. B. Burgamy April 18, 1918. The deed was filed for record April 15, 1919, and recorded, but date of record not given.

The property was fenced at the time Burg-

amy bought. His right of possession was not questioned up to about the time of the filing of this suit on December 4, 1919. After he bought he did not live on the property until about January or February following, when he built a house on the west half and sold the east half to L. E. Bourland on January 22, 1919. He testified: "I paid the taxes on the property during the time I owned it."

The lot remained fenced as when he bought until he built the house in January or February, 1919. The evidence shows no occupancy of the premises from the time Burgamy bought in April, 1918, until about January, 1919. As stated, Burgamy and wife conveyed the east half of the property to L. E. Bourland on January 22, 1919. Bourland testified: "I paid the taxes on the property."

C. U. Connellee testified (we will not state all of his evidence): When Bourland bought of Burgamy he discovered what he described as the "missing link" in the title. He went to Connellee about it and wanted Connellee to give him a quitclaim deed to the land he had bought of Burgundy. Connellee refused, saying he and his associates had conveyed the property to Mrs. Townsend and stated that the deed must come from her. Connellee in his testimony said he was mistaken at the time as to which end of the block was involved and thought the land had been conveyed to Mrs. Townsend, but that upon investigation he found that he and his associates had never sold the land, and that it therefore belonged to them, that the south end of the block belonged to Mrs. Townsend, and that the north end appellees are claiming belonged to them (appellants). Connellee said:

"Mays did not build a house on this property. He didn't build a house on this property that is in dispute. I don't remember seeing Mays throw any fence around there. There is a house on the northeast corner there now, that he put up. That lot is only 200 feet east and west. I guess that house was built by Mays. I don't know whether we ever deeded the property that that house is on. I don't know if the title to that has gone out of us or not. It is mine. I lay claim to it. I saw people using that land for years back. It is true that I didn't assert any claim to it. I am asserting claim or right to the west part of that property now. I didn't claim it till this suit was filed. I didn't assert any claim to Mr. Mays. I thought that was the property we deeded to Mrs. Townsend and maybe the people had a right to it. * * * I think I am entitled to the property these people have claimed for 25 years if they have no deed to it. * * * I could have quitclaimed one-third of this property. They asked me to give me a quitclaim and I refused to do it."

It was admitted of record that the taxes were paid for years 1914 and 1915 on the land in controversy. Appellants introduced some rebutting evidence in the form of the assessor's abstract of city lots in the town of

Eastland with reference to block –D–3 for the year 1907. The abstract shows:

"–D–3, town of Eastland, Eastland county, Texas. Rendered 200x118 and 100x200 by W. H. Day."

No renditions on behalf of appellees appear for the year 1907, nor does any further portion of this block appear on said abstract either as rendered or unrendered for 1907, the block shown to be 200 feet in width by 436 feet in length. No rendition or assessment for taxes is shown by appellees for 1908. For 1909 the assessor's abstract shows the block to have been rendered in part as follows:

"W. H. Day, 100x200 and 118x200, and G. A. Phillips, 100x194."

For the year 1910 the abstract of city lots shows the following as to said block:

"W. H. Day estate, 118x200, W. H. Day estate, 100x200, and H. A. Phillips, 100x194."

No rendition for taxes appears in behalf of appellees or their grantors for 1910, nor was the lot assessed as unrendered property. It will be seen that the entire evidence of the payment of taxes by appellees was their oral testimony that they had each paid the taxes, except as to the years 1914 and 1915, which was admitted except the school tax collector testified that Hart rendered the north half of the north half of the block for 1916 and 1917, and paid the taxes for those years. He also said that the rolls back of the year 1918 were imperfect. The block –D–3 seems not to have been divided into lots.

Under one of appellants' propositions it stated that the town of Eastland, in which the premises in controversy are located, is an incorporated town under the statute, and is likewise in an independent school district not controlled by the town of Eastland. But we find in the record no evidence that Eastland was an incorporated town, or, if incorporated, when incorporated; nor is there evidence in the record that the school district is an independent school district, nor that either the town of Eastland or the school district levied taxes for any of the series of years involved in the controversy, save and except the fact that the collector of the school district in his testimony used his tax rolls for some of the later years, 1919 and 1920, and stated what the said rolls would show and not show for those years. Article 2851, V. S., provides that all school incorporations hereafter formed under the provisions of this chapter (Acts 1905) shall have the right to levy and collect taxes and issue bonds for school purposes.

[1] We think it should appear that the school district has incorporated as such, and that levies for taxes were made by the school district for the series of years, as it does not necessarily follow that, because a school district has incorporated as such, it has levied taxes on the lands in the district. For appellees to prescribe under the five-year statute it is necessary that they show the payment of "taxes thereon, if any."

[2] We cannot take judicial notice of the facts that a town is incorporated and has levied taxes, or that a school district has incorporated as an independent school district and has levied taxes, nor do we think it devolves upon appellees to show the above facts as to the incorporation of the town of Eastland and the school district and whether levies of taxes were made by either. However, if it is admitted that the town of Eastland was incorporated during the series of years involved, and levied taxes, and the same admission is made as to the school district, it devolves upon appellees to show the payment of all such taxes, and the question is presented: Have they shown the payment of all such taxes?

[3] By their oral testimony appellants show a peaceable and adverse possession and use of the property and recorded deeds, and the payment of all taxes levied on the property from 1907 up to and including the year 1917; payment of the taxes for the years 1914 and 1915 being admitted as well as shown by oral testimony. Is such showing sufficient to sustain the finding and the judgment under the five-year statute? The statute does not require that the claimant under the five-year statute make a rendition of the property for taxes, it merely demands the payment of such taxes as may be due. Cantagrel v. Von Lupin, 58 Tex. 570. We do not understand the Supreme Court in Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026, as holding that a party may not show the payment of taxes other than by the tax receipt. In that case two tracts of land were involved, and the assessment of taxes was shown to have been made on other lands than the land involved in the suit. Thompson, as a witness, made the statement that he "paid all the taxes thereon up to and including 1888"; that he has paid taxes on other lands." There was a confusion in his evidence, in view of his rendition, as to the land upon which he had really paid the taxes. Judge Stayton said:

"Appellee's statement that he paid the taxes on the land for the years enumerated, in view of his rendition, amounts to no more than an expression of an intention to pay on the land, and this cannot override the conceded fact that his rendition did not cover the land in controversy, and the further fact that the tax roll was the collector's warrant for demanding and receiving taxes. That payment must be held to have been made under the assessment in the absence of evidence other than such as appears in the record."

In that case Judge Stayton said that—

"The payment of taxes may be proved by testimony either direct or circumstantial has

been often held by this court, but there is no testimony of either character in the transcript sufficient to show that appellee, or any person under whom he holds, paid taxes on the land in controversy for the requisite period."

It might be stated here as apparent explanation as to why some of the previous grantors are shown to have paid taxes after the time when their deed had been executed and placed of record that they retained vendor's liens to secure unpaid balances of the purchase price for the premises sold, or it may have been because, as in one instance at least the previous grantor had rendered the land before selling.

[4] As we view the evidence, the entire property was inclosed continuously, occupied, and used for one purpose or another under deeds duly registered from the time Chastain bought from Mays in 1907, who was then on the property and had it inclosed and a house thereon, until Burgamy bought of Hart in April, 1918. After that time there was a period of almost a year when the evidence does not show the premises to have been occupied, at least by the then owner, Burgamy, unless it was occupied by Miss May Harrison as a tenant as testified to by Garrett, who said:

"I believe she moved there as a tenant after I moved out. She lived there a good while, until six or eight months ago probably."

But at that time both the five and the ten years' occupancy were complete. There were short periods of time intervening between the executions of the several deeds and their registration, but each grantor in succession was claiming under the Mays deed, duly recorded July 16, 1907, by regular chain of title. Under York v. Hutcheson, 37 Tex. Civ. App. 367, 83 S. W. 895, Thomson v. Weisman, 98 Tex. 170, 82 S. W. 503, Callen v. Collins, 56 Tex. Civ. App. 620, 120 S. W. 549, Settegast v. Floyd, 214 S. W. 686, it would not be necessary, to prescribe under the five-year statute, that each deed in succession from Mays should have been recorded at all; the requirements of the statute being that each claimant in succession should hold and claim under a duly recorded deed, and that the title conveyed, by the deed is in fact for the benefit of the claimant. The subsequently recorded deeds, when recorded, disclosed each claim to be under the Mays recorded deed.

[5] Under the second assignment error is claimed to the admission in evidence of the testimony of Chastain, Garrett, and Hart as to the possession of the premises of each under their several deeds, on the ground that the petition set forth no separate possession of any one of them; appellees having pleaded either possession in themselves separately, or joint possession with themselves and their grantors.

In pleading the five-year statute of limitations, it was alleged:

"That the plaintiff claims the above-described tract of land by and through his grantors against the defendants and each of them, having peaceable and adverse possession thereof, cultivating and using and enjoying the same and paying taxes thereon, under deed or deeds duly registered for five years next preceding the filing of this suit."

The allegation as to the ten-year statute was substantially similar to the above except that it was made to apply to the ten-year statute.

We think the pleading was sufficient to apprise appellants that appellees claimed a privity of estate between themselves and their grantors. Bateman v. Jackson, 45 S. W. 224; Elcan v. Childress, 40 Tex. Civ. App. 193, 89 S. W. 84.

[6] The third assignment claims error in the court's refusal to give their special instruction No. 2, instructing the jury as to the facts necessary to be shown as to possession under a recorded deed or deeds, the payment of all taxes, specifying them, and that he must have paid them (taxes) before the end of the year for which they were assessed, etc. The burden of proof is upon the appellees claiming under the five-year statute of limitation to affirmatively show the payment of all taxes due, if any, during the full period of five years. We find in the record no period of five years in which it is specifically shown that the taxes were paid within the time beginning with the 1st of October of each year and ending with the last day of the succeeding January of each year, unless it is found in the statement of some one or more of the witnesses that they or some one of them paid the taxes on the property for the full period of five consecutive years.

Without quoting at length from the opinion of Judge Greenwood in Baker v. Fogle, 110 Tex. 301, 217 S. W. 141, 219 S. W. 450, it was there held that a party claiming title to land under the five-year statute of limitation is bound to show the payment of taxes for each year of the five years before they become delinquent, as the law of limitation of actions for land is founded upon notice, and the landowner receives the notice which he must have by the payment of the taxes before they become delinquent.

[7] Chastain bought of Mays and his deed was recorded on July 16, 1907. He conveyed to Garrett, and the deed was recorded May 22, 1915. It was admitted that all taxes were paid on the property for the years 1914 and 1915. Chastain testified, as quoted above, that he paid all the taxes on the property during the time he owned it, and always paid them before they were due; that is, no tax on the property became delinquent between July 16, 1907, and the last day of January, 1916. It was not developed by cross-examination,

or in any other way, whether tax receipts for the payment of the taxes were duly and regularly issued for each year as the taxes became due and payable, nor was it shown whether tax rolls showed the payment of the taxes regularly as they became due. We must assume under Chastain's testimony, in the absence of any controverting evidence, that the taxes were duly paid each year before they became delinquent for the years 1907 up to the 31st of January, 1916. If the taxes were duly and regularly paid, the owner had such notice of their payment as comes within the rule stated in the case of Baker v. Fogle, supra.

But, if we should be in error as to the sufficiency of the evidence to show the payment of the taxes under the five-year statute, the evidence seems clear that appellees and their grantors had continuous, peaceable, and adverse possession of the premises, cultivating, using, and enjoying the same, for ten years before the filing of the suit, and that the possession was held under deeds duly registered fixing the boundaries of their claim.

[8] We think the court was not in error in admitting in evidence the deeds complained of in the sixth assignment, but, if error, it was not reversible error. We cannot see how the admission in evidence of the deeds from parties claiming to own the land previous, and under whom Mays deraigned title, could in any way have prejudiced appellants.

We have carefully considered the assignments not discussed, and think they present no error.

The case is affirmed.

HIGGINS, J., concurs in the result.