## W. P. CALLEN v. V. A. COLLINS ET AL.

Decided June 30, 1909.

**1.—Limitation—Five Years—Deed Duly Registered.**

The five years statute of limitation requires that the deed under which title may be acquired by adverse possession shall be duly recorded, and this means not only that the deed must be properly acknowledged and certified for record but that the record itself must show this fact.

**2.—Same—Registration.**

Where the record of the deed showed that the certificate of acknowledgment was fatally defective, the grantee could not prescribe under the five years statute, though in fact the deed was properly acknowledged and such acknowledgment was properly certified by the officer.

**3.—Same—Adverse Possession.**

Where the land in controversy was the south half of a 320 acre survey, and the possession under a deed extended only to a few acres thereon which the grantee cultivated for ten years in connection with the larger holdings on the north half of the survey on which he lived, such possession was not sufficient to perfect title under either the five or ten years statute of limitation.

**4.—Same—Tax Deed.**

A tax deed, describing the land with certainty, reciting that the land was sold as the property of unknown owners, and duly recorded, is sufficient to support the five years statute of limitation, without proof of the authority to sell.

**5.—Same—Deed.**

It is not necessary that the deed under which the possessor claims should be to him. All that is required is that he shall hold and claim under a duly recorded deed and that the title conveyed by such deed is in fact for the benefit of the claimant.

**6.—Same—Possession.**

Where husband and wife entered upon a 320 acre survey and improved it, and thereafter purchased same at tax sale and continued in possession, claiming same under the tax deed which was duly recorded for four years, at which time they separated and were divorced by a decree which ordered a partition, which order was never executed, and after said decree the divorced wife continued in possession, claiming the entire survey beyond the time necessary to complete the five years, all taxes being paid, the right acquired by the tax deed was a community right, and her possession and claim under it inured to the benefit of the common estate; and if her possession was not sufficient to perfect title in the common estate to the entire survey, she at least acquired title to one half by limitation and it appearing that a one half appropriated by her and sold was the unimproved half and presumably of no greater value than the remainder, her deed vested in her grantee the title to such half.

**7.—Damages—Cutting Timber.**

Where the defendant, in trespass to try title, purchased the land on the advice of counsel that he was getting a good title, and the plaintiff recovered upon title by limitation, the mere fact that defendant knew of the adverse occupancy and claim did not warrant the conclusion that he acted in bad faith in cutting timber, so as to subject him to a recovery of the value of the timber in its manufactured state, which increased value was created by labor and money expended by him in the honest belief that the property was his.

Appeal from the District Court of Tyler County. Tried below before Hon. W. B. Powell.

*Joe W. Thomas,* for appellant.—The legal title being admitted in the defendant, plaintiffs' failing to show deed duly registered could not hold under five years limitation, and their possession, occupancy and claim were not sufficient for any character of limitation. Niday v. Cochran, 93 S. W., 1028; Tucker v. Smith, 68 Texas, 481; McKie v. Anderson, 78 Texas, 207; Alexander v. Newton, 11 Texas Civ. App., 618; Cook v. Oliver, 83 Texas, 561.

A void deed will not support five years limitation, for it is not a deed "duly registered."

The deed does not purport to be that of J. L. Gilder, but he attempts to sell the title of Unknown Owners, and the prerequisites of a sale not being shown, the description is insufficient. It says, 320 acres of land, the Kerger survey, all the interest, right and title of the Unknown Owners. Kimmey v. Abney, 107 S. W., 886; Claiborne v. Elkins, 79 Texas, 380; Ycung v. Trahan, 97 S. W., 148; Wofford v. McKinna, 23 Texas, 36; Bullock v. Smith, 72 Texas, 548; Harkness v. Devine, 73 Texas, 628.

If one purchases timber, cuts and removes it, in good faith, believing at the time he has a right to do so based upon reasonable grounds, he is liable in damages, if the property of another, only for its value standing, or stumpage value, and not for its improved or manufactured value. Pettit v. Frothingham, 106 S. W., 907; Texas & N. O. Ry. v. Jones' Ex'rs, 34 Texas Civ. App., 94; Simpson v. Lee, 34 S. W., 1054; Emporia Lumber Co. v. League, 105 S. W., 1167.

*V. A. Collins,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by V. A. Collins and Vallie Coleman, a *feme sole,* who sued for herself and as next friend for her minor daughter, Birdie Ivey, against appellant, to recover title and possession of a tract of 160 acres of land, the south half of the John Kerger 320-acre survey in Tyler County, and also to recover damages for timber alleged to have been cut from said land by appellant. The defendant answered by general demurrer, general denial and plea of not guilty. The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff for the land and for the sum of $850, the value in its manufactured state of the timber cut from the land by the defendant.

The facts are these: The 320 acres, of which the land in controversy is a part, was patented by the State of Texas to John Kerger, and appellant holds a regular chain of title thereto from and under Kerger. Some time in 1877 George Wallace and wife, Emma Dell Wallace, improved and settled upon the survey. Their improvements consisted of a dwelling house, out-houses and a field of about twenty acres. These improvements were made near the center of the survey. In 1878 the survey was sold for taxes due the State and the county of Tyler for the year 1877, and George Wallace became the purchaser. The sheriff's deed to him is as follows:

"State of Texas, County of Tyler.

"Know all men by these presents: That certain taxes are due the State of Texas and county of Tyler by the Unknown Owners of the following-described tracts or parcels of land as assessed against for the year 187—, upon the following-described tract or parcel of land, viz., 320 acres of land, the headright of John Kerger, situated in Tyler County, which taxes amount to one dollar and seventy-two cents as appears from the unrendered tax roll of said county for the year 1877,

and whereas the time provided by law for the payment of said taxes having expired, though demanded of the said Unknown Owners of said tract of land through the proper legal notice, the same remaining unpaid, I, James L. Gilder, tax collector of Tyler County, in compliance with the law and by virtue of the tax roll aforesaid, levied upon and seized certain tracts of land as belonging to said Unknown Owners of said tract hereafter described, to be sold to make the said amount of said taxes yet unpaid, together with the costs accrued, and have advertised the said land in the manner and for the time required by law, and whereas, in pursuance with the said advertisements, I did offer said lands for sale at public auction at the time, place and in the manner required by law, when George Wallace bid the sum of $6.25 for 320 acres of said land, which sum being sufficient to make the said amount of unpaid taxes, and with $4.50 costs accrued thereon and the costs of this deed, which being the highest and best bid offered for the least number of acres of said land, and the same·was struck to him, the said George Wallace. Now, therefore, for and in consideration of the sum of $6.25 to me in hand paid, receipt of which I hereby acknowledge, and I have by these presents and by virtue of the power in me vested by law, and have bargained, sold, transferred and conveyed, and by these presents do bargain, sell, transfer and convey unto him, the said George Wallace and his assigns, all the right, title and interest which the said Unknown Owners had at the time when the assessment before mentioned to the following described tract or parcel of land, viz., 320 acres of land situated in Tyler County, granted by the State of Texas to John Kerger. To have and to hold unto him the said George Wallace, his heirs and assigns, the above and foregoing tract of land, together with all and singular the rights and appurtenances to the same belonging or in any way appertaining in fee simple forever. Provided, nevertheless, the said land herein conveyed may be redeemed by the said Unknown Owners or said owners' heirs or legal representatives within two years from this date in the manner provided by law.

"Witness my hand and seal of office this 2d day of October, 1878.

                    "J. L. Gilder, Tax Collector of Tyler County.

"Attest: Henry West."

This deed was duly recorded in the deed records of Tyler County on October 9, 1878.

George Wallace and wife lived together on this land until 1882, when they separated and were divorced by a decree of the District Court of Tyler County. When he and his wife separated, Wallace left the place, but she continued to occupy it and claim it. It seems that the decree of divorce ordered a partition of the property and commissioners were appointed to make said partition, but no partition was made by them and no further action was taken by the court in the matter. Mrs. Wallace remained in possession of the property and asserted claim to the whole tract. Wallace died in 1884 and his heirs conveyed their interest in the survey to C. M. Williams.

After Williams purchased from the Wallace heirs he had a line run through the survey from east to west, dividing it into two equal parts.

This line left all of the improvements upon the north half of the survey except about four acres of the field. No possession seems to have been taken by Williams of any portion of the survey, and Mrs. Wallace continued to occupy and claim the whole tract and did not recognize the partition made by Williams. On October 3, 1887, Mrs. Wallace conveyed to A. J. Ivey the south half of the survey. The certificate of acknowledgment of this deed, as it appears of record, does not recite or show that the grantor was known to the officer to be the person whose name was subscribed to the deed. The deed was filed for record on the day of execution and thereafter recorded in the deed records of Tyler County. The original deed was introduced in evidence and the certificate of acknowledgment is in all respects regular.

At the time Ivey purchased he was living with Mrs. Wallace and cultivating the 20-acre field, about four acres of which was, as before stated, on the south half of the survey according to the line run by Williams and which was adopted by Mrs. Wallace in her conveyance to Ivey. Some time after his purchase, the exact date not being shown, he built a new house on the north half of the survey between Mrs. Wallace's old house and the line dividing the survey, and put in a small field of four or five acres, the greater portion of which was on the land purchased by him. The larger field was cultivated by Ivey from 1882 to his death in 1898, and he also cultivated the smaller field from the time it was put in up to his death. During all of this time he lived in the old Wallace house or in the house built by him, neither of which was on the land in controversy. After his purchase of the south half of the survey he paid all taxes that became due thereon as they accrued up to the time of his death and continuously asserted claim to the land.

As before stated, Mrs. Wallace claimed all of the land after her divorce from her husband. She lived on the place continuously from her settlement thereon in 1877 until she became insane in 1894 and was sent to the asylum.

All of the taxes on the entire survey were paid by Wallace and by Mrs. Wallace until her sale of the south half to Ivey in 1887. After the new house was built it was occupied by Mrs. Wallace and Ivey until she was sent to the asylum, and he continued to occupy it until his death. In 1897 Ivey married the plaintiff, Vallie Coleman. She lived with him on the place until his death in 1898. It does not appear that the place has been occupied since the year 1898. Plaintiff, Birdie Ivey, is the daughter of A. J. Ivey, and plaintiff Collins claims one-half interest in the land in controversy under a deed from the other plaintiffs.

When appellant purchased the land he had the title examined by his attorney and was told that he was getting a good title. He knew that plaintiff, Mrs. Coleman, and her former husband, Ivey, had lived on the Wallace place, and by reasonable inquiry could have ascertained the facts in regard to the extent and character of Ivey's possession of the land in controversy, and also of the Wallace claim to the whole survey. Before he cut the timber from the land he was told by Mrs. Coleman that the land was her property, and that he must not cut the timber. He relied in the purchase of the land upon the advice of his

attorney, and in good faith believed that plaintiffs had no title, and that those from whom he purchased owned the land, and that the timber cut by him was his property. The value of the timber cut from the land in its manufactured state was $850. The value in its original state was not found by the jury and the evidence upon that issue is conflicting.

We shall not discuss the several assignments of error presented in appellant's brief in detail. In our opinion the judgment in favor of plaintiffs for the 160 acres of land in controversy must be sustained.

We agree with appellant that the evidence fails to show title in Ivey under the five or ten years statute of limitation under his deed from Mrs. Wallace. As it appears upon the record this deed was not duly recorded, in that the certificate of acknowledgment, as shown by the record, was fatally defective, and we do not think that the fact that the deed was in truth properly acknowledged and such acknowledgment properly certified by the officer cures the defect in the record. The five years statute of limitation requires that the deed under which title may be acquired by five years adverse possession shall be duly recorded, and this, we understand, means not only that the deed must be properly acknowledged and certified for record, but that the record itself must show this fact. In addition to this, we do not think the possession of Ivey was sufficient to perfect title under either the five or ten years statute of limitation. The evidence shows that he never lived upon the land in controversy, and his possession of a few acres thereon, which he is shown to have cultivated for ten years, was in connection with the larger holdings in the north half of the survey, and could only be regarded as a small encroachment on the tract in controversy, insufficient to give notice to the true owner of an adverse claim to the 160 acres. Bracken v. Jones, 63 Texas, 184; Tucker v. Smith, 68 Texas, 473; Downs v. Powell, 116 S. W., 873.

We are of opinion, however, that the evidence shows title by limitation in Mrs. Wallace and her husband to the entire survey under the tax deed to her husband, George Wallace. That this deed is sufficient to support the five years statute of limitation is well settled. Wofford v. McKinna, 23 Texas, 36; Seemuller v. Thornton, 77 Texas, 158; Fowler v. Simpson, 79 Texas, 618; City of El Paso v. Fort Dearborn National Bank, 96 Texas, 496.

The evidence shows that Mrs. Wallace and her husband held and claimed the land adversely under this deed for about four years before their separation, and that after the separation and divorce Mrs. Wallace continued her occupancy and claim to the whole survey. The right acquired by the sheriff's deed was a community right, and we think Mrs. Wallace's possession and claim under this would inure to the benefit of the common estate of herself and husband, and this right of the community to claim the benefit of her possession was not destroyed by the divorce decree, and the unexecuted order directing the partition of the property.

This court has held that one in possession of land under a deed to himself and another and who has purchased the interest of his cotenant, but has failed to place his deed conveying such interest on rec-

ord, can prescribe under the five years statute of limitation under the recorded deed to himself and original co-tenant.   York v. Hutchison, 37 Texas Civ. App., 367.

It is not necessary that the deed under which the possessor claims should be to him, but all that is required is that he shall hold and claim under a duly recorded deed, and that the title conveyed by such deed is in fact for the benefit of the claimant.   Thompson v. Weisman, 98 Texas, 170; Kirby v. Hayden, 44 Texas Civ. App., 207.

If the possession of Mrs. Wallace did not perfect title in the community estate to the entire survey, she certainly acquired title to one-half thereof under said tax deed, and the evidence showing that the one-half appropriated by her and sold to Ivey was the unimproved portion, and presumably of no greater value than the remaining half, we think her deed to Ivey vested title in him to the land in controversy.

We agree with appellant that the facts are not sufficient to hold him liable for the manufactured value of the timber cut from the land. The mere fact that he knew that Mrs. Coleman claimed the land, and that it had been occupied and claimed by the Wallaces and by Ivey, does not warrant the conclusion that he acted in bad faith in cutting the timber.  He did all that a prudent man would have done to inform himself as to the title, and the fact that he and his attorney were mistaken in their conclusions as to the legal effect of the known or ascertainable fact in regard to appellee's claim ought not to subject him to the penalty of having to pay plaintiffs the increased value of the timber cut from said land, which value was created by labor and money expended by him in the honest belief that the property was his. Texas & N. O. Ry. Co. v. Jones, 34 Texas Civ. App., 94; Young v. Pine Ridge Lumber Co., 100 S. W., 784; Louis Werner Stave Co. v. Pickering, 119 S. W., 333.

The judgment of the court below in favor of plaintiffs for the land in controversy is affirmed, and the judgment for recovery of the value in its manufactured state of the timber cut from the land by appellant is reversed, and the cause remanded for a new trial upon that issue.

### ON MOTION FOR ADDITIONAL FINDINGS OF FACT.

At the request of appellees we make the following additional findings of fact shown by the record in this cause:

1.   That William Allison lived on twenty acres in the south half of the John Kerger survey, the land in controversy, holding under a deed from M. L. Perkins, who claimed under a deed from A. J. Ivey, both deeds being duly of record.

2.   That Joe W. Thomas, attorney for appellant in this suit, and the attorney who examined the title for appellant when he bought, knew of all the deeds which were of record affecting the title to the land in this suit.

3.   That the deeds from Ivey to Perkins and from Perkins to Allison were duly of record, and were introduced by appellees.

*Affirmed in part and reversed and remanded in part.*