## CALLEN v. COLLINS et al.

(Court of Civil Appeals of Texas. Galveston. Feb. 19, 1913.)

1. EVIDENCE (§ 542*)—OPINION EVIDENCE—COMPETENCY OF EXPERT—ESTIMATE OF TIMBER.

A witness who testified that he had no independent experience as an estimator of timber, but that his experience had been confined to scaling timber, that he could look at a tree and tell how many feet of timber there were in it, that he made an estimate of the number of feet of timber taken from the land in controversy before they were cut down and taken away, and that from such examination he could tell, with reasonable certainty, what amount of timber was taken, was competent to give an opinion as to the amount taken.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2355; Dec. Dig. § 542.*]

2. EVIDENCE (§ 543*)—OPINION EVIDENCE—COMPETENCY OF EXPERT—MARKET VALUE.

A witness who testified that he knew the location of the land in controversy, showing that he had a correct idea of what constituted market value and knowledge of the timber market in that locality at the time, although he did not remember any sales at that particular time, was competent to testify as to the market value of timber taken therefrom.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

3. NEW TRIAL (§§ 101, 105*)—GROUNDS—MISCONDUCT OR PREJUDICE OF WITNESS.

The fact that a witness for plaintiff admitted, immediately after he had testified, that the purpose of his testimony was to hurt the attorney for the defendant was not ground for a new trial, where such statements were known, and might have been put in evidence during the trial for the purpose of impeaching the testimony of the witness.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 205, 206, 221–223, 229; Dec. Dig. §§ 101, 105.*]

4. TRESPASS TO TRY TITLE (§ 52*)—DAMAGES—INTEREST.

In an action to recover land, plaintiff was entitled, as a matter of law, to interest upon the value of timber unlawfully cut by defendant from the time it was taken.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 83, 84; Dec. Dig. § 52.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by V. A. Collins and others against W. P. Callen. Judgment for plaintiffs, and defendant appeals. Affirmed.

Joe W. Thomas, of Woodville, for appellant. V. A. Collins, of Beaumont, for appellees.

PLEASANTS, C. J. This suit was brought by appellees against the appellant to recover a tract of land on the John Kerge survey in Tyler county, and also to recover the value of timber cut from said land by appellant. This is the third appeal of the case. The opinion of this court on the first appeal is reported in 56 Tex. Civ. App. 620, 120 S. W. 547, and on the second in 135 S. W. 651. The only issue involved on the trial of the case from which this appeal is prosecuted

was the amount and value of the timber taken from the land by appellant. The trial in the court below with a jury resulted in a judgment in favor of plaintiffs for the sum of $450, with interest thereon from December 7, 1907, at the rate of 6 per cent. per annum.

[1] In answer to questions submitted by the charge, the jury found that 150,000 feet of timber was cut and taken from the land by the appellant, and that the value of the timber was $3 per 1,000 feet. Under appropriate assignments of error, appellant complains of the rulings of the court in permitting the witness McNeill to give his estimate of the number of feet of timber taken from the land by appellant, over appellant's objection that the witness was not shown to be qualified to make an estimate or express an opinion as to the quantity of timber taken from the land; and in permitting the witness Barclay to testify as to the market value of the timber, over appellant's objection that the witness had not shown himself qualified to testify as to the market value of this timber at the time and place said timber was cut and taken by the appellant. We think neither of these assignments should be sustained. In regard to his experience as an estimator of timber and the manner in which he made the examination and estimate of the timber in controversy, the witness McNeill, after stating that he had had very little experience in estimating standing timber, and in fact could not say that he had any experience in making estimates of this kind, and could not say he was as well qualified as any other estimator to determine, with reasonable accuracy, how many feet of standing timber there was on any given tract of land by going through and looking at the timber, testified as follows: "The independent experience I have had is in scaling timber that is down by applying the measuring stick. I have had 20 years such experience. I have been scaling timber quite a while, but have had no experience in estimating. My business is scaling. The only experience I have had is scaling standing timber is scaling timber after it is down on other people's estimate. Q. I will ask you if you can state, with any degree of accuracy, what certain amount of timber is on a tract of land. A. I don't think that any estimator can do that accurately. Q. You don't think you can do it? A. Not exactly to the foot; no man can do it. * * * I did not estimate by individual trees; none do that. They generally measure off by strips. I can look at a tree and tell how many board feet in the tree within a very few feet. I can go to a tree and tell pretty well what it will scale with the Herring Scale. I arrive at this knowledge from my experience in scaling. I have had others scale for me while in the log. From my experience in scaling, I could look at a tree and tell how much timber is

in it. I could size up an acre the same way, but I would have to be very careful. I could size up an acre and tell how much timber was on it. I did this estimating very carefully. To the best of my knowledge, it took me through the day to do this estimating. I did not count the trees. I looked at every tree and kept them in mind. I did not estimate the land into acres in my mind's eye. I first run around the survey, the lines, then took it by strips backward and forth. I do not know how wide the strips, did not blaze them, just kept them in my mind's eye. I could see all the timber on the land in the way I made the strips. * * * From observation and the estimate I took, I could tell as well as any other estimator what was there. I can tell from my experience as scaler. I can tell reasonably what is on that land. I know the estimate placed on timber. I have scaled it. I saw the timber before it was cut. * * * I estimated there to be 150,000 feet of timber on the 140 acres of the Kerge survey from 10 inches up. I applied the rule to the timber from 10 inches down. I made this estimate some 3 or 4 years past, not exact. I made the estimate before the timber was cut."

From this statement of the testimony of the witness as to his qualification to give an estimate of the quantity of timber taken from the land, we think his testimony as to the quantity of said timber was admissible. On a former appeal of this case, we held that, this witness having stated that he could not, from his experience as an estimator of timber, state with any degree of accuracy the quantity of timber taken from this land, he should not have been permitted to give his estimate of the quantity of said timber (Callen v. Collins, 135 S. W. 651); but when he testifies, as he did upon the last trial, that he can look at a tree and tell how many feet of timber there is in it, that he looked at every tree on this land before they were cut down and taken off, and made a careful estimate of the number of feet of timber taken from the land, and that, from his examination of the trees on the land and his experience as a scaler, he could tell, with reasonable certainty, what amount of timber was taken from the land, his testimony was, we think, clearly admissible. His further statement that he had had little or no experience as an estimator of standing timber might affect the weight, but would not affect the admissibility, of his testimony.

[2] The witness Barclay testified that he knew the market value of the timber taken from the land by appellant, and that it was worth $3 per 1,000 feet. He also testified that he knew the location of this land, which was situated about two miles from the railroad, and that he had been dealing in timber in Tyler county for about 10 years; and his recollection was that he had made sales

about the time this timber was taken. On cross-examination he testified that he could not remember how many sales of timber he had made, and he only knew sales were made by him. He could not recall the date of any sales he had made, and would not say whether he had made any sale within six months of the time this timber was taken. He further testified: "I have been keeping up with the price for the past 10 years. * * * I know, independent of the two or three sales I made, the price Mr. Carter paid. The price paid is what we call market price. * * * I had timber quotations from different purchasers of timber around, a good many millmen right around me, and they would give me quotations of what they wanted to pay for stumpage. I know from the quotations I had what they offered as the market value." The fact that the witness did not remember any sales that were made at the very time the timber in question was taken, nor of any sales in the immediate vicinity of this timber, did not show that he was not qualified to testify as to the market value of the timber in question at the time and place it was taken by appellant. His testimony showing that he had a correct idea of what constitutes the market value of an article, and knowledge of the timber market in that locality at the time in question, was amply sufficient to qualify him to testify as to the market value of the timber in question.

[3] The fifth assignment complains of the refusal of the trial court to grant a new trial on the ground that the witness Barclay, who testified for plaintiff that the timber taken by the appellant was worth $3 per 1,000 feet, was unduly prejudiced and had admitted, after he had testified in the case, that the purpose of his testimony was to "knock" on Thomas, the attorney for appellant, "and the verdict being based upon such character of testimony ought not to be permitted to stand."

In support of this ground for a new trial, the following affidavits were presented with the motion:

"The State of Texas, County of Tyler.

"Before me, the undersigned authority in and for Tyler county, Texas, on this day personally appeared W. P. Callen, well known to be a creditable person, after being by me duly sworn, deposes and says, that he was present at the foot of stairway in the courthouse at Woodville, Texas, shortly after N. B. Barclay had testified in the case of Collins et al. v. Callen, No. 2,970, and that said N. B. Barclay stated to affiant in the presence of J. W. Hankins as follows: 'Dr. Callen, is this your case?' After being advised it was, said, 'I did not know it was your case, if I had known that was your case I would not have knocked on you as I did in giving testimony, but I thought it was Thomas' case and was doing it to knock on Thom-

as;' and he seemed to be sorry he did it after learning it was my case.

"W. P. Callen.

"Subscribed and sworn to before me by W. P. Callen, this the 2d day of February, A. D. 1912.           C. E. Goolsbee,
"Notary Public in and for Tyler County, Tex."

"The State of Texas, County of Tyler.

"Before me, the undersigned authority in and for Tyler county, Texas, on this day personally appeared J. W. Hankins, well known to me to be a creditable person, after being by me duly sworn, deposes and says, that he was present at the foot of stairway in the courthouse at Woodville, Texas, immediately after N. B. Barclay had testified in the case of Collins et al. v. Callen, No. 2,970, and said N. B. Barclay said to Dr. Callen, the defendant, 'Dr. Callen, is this your case?' After being advised it was, said, 'I did not know it was your case, if I had known that was your case, I would not have knocked on you as I did in giving testimony, but I thought it was Thomas' case and was doing it to knock on Thomas;' and he seemed to be sorry he did it after learning it was doctor's case.

"Subscribed and sworn to before me by J. W. Hankins this the 2d day of February, A. D. 1912.           Joe W. Thomas,
"Notary Public in and for Tyler County, Tex."

The court did not err in the ruling complained of by the assignment. The affidavits filed by appellant, before set out, show that the statement made to him by the witness Barclay as to his testimony was made during the trial of the case, and therefore might have been put in evidence, before the jury trying the case, for the purpose of impeaching the testimony of the witness. The statements of Barclay shown by these affidavits, if in fact made by him, would not necessarily defeat plaintiff's right to recover the amount awarded him by the jury, and could only be used for the purpose of impeaching the testimony of said witness. The fact that such statements had been made by the witness "immediately after" he had testified, and therefore clearly before the close of the trial of the case, and might have been put in evidence on the trial, shows that it was not newly discovered evidence; and therefore a new trial should not have been granted for the purpose of allowing appellant to obtain the benefit of such evidence. A new trial is never allowed for the purpose of obtaining evidence that was known and accessible to the party asking for the new trial at the time the cause was tried.

[4] The court did not err in awarding appellees' interest on the value of the timber as found by the jury. Appellees were entitled to interest, as matter of law, upon the value of timber from the time it was taken by the appellant, and therefore it would not

have been proper to have submitted to the jury the question of whether appellees should recover such interest. While somewhat indefinite, we think the evidence is sufficient to sustain the judgment in fixing December 7, 1907, as the date on which the timber was taken by appellant.

This disposes of all of the questions presented by appellant's assignments of error. We are of opinion that the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.