**MOSS et ux. v. YAGER et al.  (No. 3757.)**

Court of Civil Appeals of Texas.  Texarkana.
Dec. 13, 1929.

Rehearing Denied Jan. 2, 1930.

Wm. M. Cramer, of Dallas, for appellants.
Terrell & Miller and W. B. Harrell, all of Dallas, for appellees.

LEVY, J.  The appellee Miss Nellie Yager is the owner of lot 9, and the appellant Mrs. Lula Moss is the owner of lot 10, in block 144, Third addition to Oak Cliff. Each of the parties, as admitted, has title by deeds of record in regular chain from the sovereignty of the soil. The controversy between the parties was solely that of where the true boundary line between the two lots was located. In the suit the appellee also asked for recovery of damages for destroying blackberry vines, damaging a gravel walkway and diverting the flow of rainfall in injury to the pillars and underpinning of her residence. The court peremptorily instructed a verdict in favor of the appellee as to the boundary line, but submitted to the jury the issue as to damages. The jury awarded the appellee $280 damages. There is evidence to support the verdict of the jury in the matter of damages, and their finding is sustained. The major point in the appeal involves the giving of the peremptory instruction as to the boundary line.

It is believed the court did not err in giving the instruction, because the facts were undisputed that an old fence was long accepted and acquiesced in as the fixed and established boundary line between the two lots, and the parties to the suit were estopped to deny that it was a division line. The property was a part of a farm at the time it was mapped and platted into lots and blocks as an addition. In 1904, and shortly after the addition was completed, Mr. G. C. Davis purchased corner lot No. 10 in block 144, and his sister Mrs. Dempsey bought the adjoining lot No. 9. Each lot was 50 by 110 feet. The deeds described the lots by number and block in Third addition to Oak Cliff. At the time there was one house in the block, on lot 8, and that lot was fenced. In 1906, about 2 years after the purchase of the property, Mr. Davis and his sister built houses upon their respective lots and occupied them as homes. At the same time Mr. Davis and his sister decided to have a fence put up around their respective lots. They discussed the building of a partition fence between their lots. Neither of them knew the true boundary line, and there were no marks on the ground to indicate it, and they did not employ a surveyor to locate it. Mr. Davis and his sister took a tapeline and measured on the ground 50 feet, beginning at the fence on lot No. 8. On this line so run a fence was built by Mr. Davis. Mr. Davis testified: "As to whether or not I said anything to my sister about building the fence: I told her we would build a partition fence up to the designated part where we stepped off, and she could put her gate on the west side to go into her back yard, and I would put mine on the east side. As to whether or not I indicated or pointed out to my sister and indicated to her about where this fence would run: we measured if off, measured 50 feet from the old fence back

east. The building of that fence was satisfactory to her. The fence was built shortly after the house was completed. I never did claim any land west of that fence over on my sister's side of her lot. My sister raised a garden on her property, and my sister and me had about the same amount of property enclosed. Each of us claimed up to and used up to this fence that I built there as the division line between us; as far as we were concerned that was the division line between the two properties—the established line." Mrs. Dempsey testified to the same effect as her brother. She affirmatively said: "When he made the measurement and found the location and pointed out to me what he said was the division line, why I agreed that it was all right. It was satisfactory to me, and I agreed to it."

In May, 1911, Mr. Davis sold his lot, No. 10, to Mrs. Mansfield; and in July, 1918, Mrs. Mansfield sold it to appellant, Mrs. Lula Moss. Mr. Davis' sister, Mrs. Dempsey, sold her lot No. 9 to Miss Carter; and in August, 1919, Miss Carter sold the lot to Miss Nellie Yager, the appellee. Before buying lot 10 Mrs. Moss and her husband went into the yard and saw the fence between lots 9 and 10. Mrs. Moss said she saw that it was an old fence and thought that it was on the west line of the lot, and the division line. Prior to buying lot 9 Miss Nellie Yager went upon the property, saw the old fence between the two lots and thought that it was a partition fence and division line between them. Both Mrs. Moss and Miss Nellie Yager planted flower, vines, and shrubs on their lots up to the fence, and claimed the land to the fence. Neither one questioned that the fence built in 1906 by Mr. Davis and then standing was the division fence and line between the lots. In February, 1925, however, the surveyor for the city made a survey of the addition, including lots 9 and 10, with the view of laying concrete sidewalks. The appellants, being informed of the survey, and that according to the survey the old fence was resting 3½ or 4 feet short of the real line, had the old fence torn down and a new one built about four feet further west. This suit was then immediately brought by the appellee. These facts, briefly stated, are undisputed. It further appears, though, that although there was a survey made in 1925 by the appellants, yet such survey may not be regarded as conclusively correct. It was shown that "the city had spent a thousand or fifteen hundred dollars out there in engineering cost running all those lines out and putting marks on the walks. * * * There is not an original stake put in by the man who laid out that addition back in 1889 to be found in the whole addition. In making my survey I did not locate those stakes and measure from those stakes. They are not there and they have never been found. * * * I did not find any of the landmarks or monuments placed there by the surveyors of the Land and Loan Company. I never have found in any of my surveys in that district any marks that can be said to be the original stakes placed by the surveyor of the original addition. I was not able to trace the footsteps of the original surveyor—not to the extent of finding any stake he had placed."

In these facts it is immaterial whether or not Davis and his sister were right or wrong in their belief that the line they established was precisely where it ought to be. The boundary line was not known, and there was nothing on the ground to indicate where it should be, and it was uncertain. It was the purpose of Mr. Davis and his sister to conclusively determine the boundary line and a division line between the two lots. And the fence line was for more than 18 years accepted and acquiesced in as the boundary line or division line between the two lots. The facts conclusively show an agreed boundary.

The judgment is affirmed.