**COOK v. WINTER.**
No. 5819.

Court of Civil Appeals of Texas. Amarillo.
Oct. 27, 1947.

Rehearing Denied Nov. 24, 1947.

146

Sanders, Scott, Saunders & Smith, of Amarillo, for appellant.

Clayton Heare, of Amarillo, and Frank M. Tatum, of Dalhart, for appellee.

PITTS, Chief Justice.

This is a trespass to try title suit involving a strip of land containing 53.8 acres extending across the southernmost part of Section 111, Block 2, G. H. & H. RR. Co. survey situated in Hansford County, Texas. Appellant, W. U. Cook, filed the suit on November 28, 1944, to recover the said entire section giving its metes and bounds. Appellee T. K. Winter answered with a general denial, a plea of not guilty, and interposed a cross action for title and possession to the said 53.8 acres only, which is within appellee's enclosure and is described by metes and bounds in his pleadings. Appellee further pleaded the ten year statute of limitations as a defense to appellant's alleged action and in support of his claim to the land.

The case was tried to a jury which found in favor of appellee on the question of limitation and judgment was rendered accordingly from which an appeal has been perfected to this Court. Appellant had moved for an instructed verdict and he later moved for judgment non obstante veredicto but was overruled in both instances.

The record reveals that in the year 1916 appellee bought Section 112 of the same block lying immediately south of and contiguous to Section 111 and that appellant bought the said Section 111 on August 3, 1929. The record further reveals that there had been two surveys made of the block in question both of which surveys affected the two sections. The first survey was made by T. O. James some years prior to 1916, the exact time not being shown by the record. Howard Trigg made the second survey in 1929 which resulted in the location of the recognized common boundary line between the two sections and which revealed that both sections had excess acreage. The locations of the common corners between the two sections by the two surveys made being different, resulted in a discrepancy of 53.8 acres of land, the same being the strip above referred to, which discrepancy, together with the claims of the parties to the land in question, caused the filing of this law suit. The record shows that for some time prior to 1916 the strip of land in question was completely under fence and enclosed together with Section 112, although the strip was later recognized as a part of Section 111. Prior to 1916

there was also a field in the northeast corner of Section 112 which field included a part of the strip in question. The field was about .6 of a mile square, contained about 265 acres, and included a little more than one-half of the strip of land in question. The fence along the north side of the field separated it from the remainder of Section 111. For some time prior to 1916 the north fence of the field extended due west to the northwest corner of Section 112 as the same had been located by the T. O. James survey helping to enclose Section 112 together with the strip in question, but that part of the fence between the northwest corner of the field and the northwest corner of Section 112 as established by T. O. James had been removed when appellee bought Section 112 from George V. Spivey, leaving an opening between it and Section 111. However the corners still had the markers that had been placed there by T. O. James. Appellee testified that Spivey took him on the grounds in 1916 and pointed out to him the four corners of Section 112 as they had been established by T. O. James before selling the land to him and that Section 112 then contained the strip of land in question but it was not then known that the said strip of land was actually a part of Section 111. He further testified that the said section had inprovements on it and he lived on it a large part of the time until he sold it to Jim Rowan in 1929; that he bought it back from Rowan and repossessed it in 1931, at which time the fence had been rebuilt between the northwest corner of the field heretofore mentioned and the northwest corner of said Section 112 as the same had been located by the T. O. James survey; that the said Section 112 together with the strip in dispute was all enclosed when he bought it back from Rowan and that it had remained enclosed and he had owned and held continuous possession of it since 1931. He testified that he had occupied it four years immediately after 1931 and kept a tenant on it the remainder of the time. The record also reveals that appellant and appellee by mutual agreement sometime after 1931 opened a road between them along the line established by T. O. James and built a lane 60 feet wide, each furnishing 30 feet of the lane and his own fence, leaving the remainder of the strip in question under fence with appellee's Section 112. At a later date the road was made wider by order of the County Commissioners Court and the lane was made 100 feet wide with each party furnishing 50 feet of the lane and his own fence, continuing to leave the remainder of the strip in question enclosed with appellee's Section 112.

Appellant predicates his appeal upon seven points of error which we shall discuss in the order that seems most logical to us.

■ Appellant's first point of error, complaining that the trial court erred in holding that the ten year adverse possession statute was available to defendant because the land was not patented by the State until August 11, 1944, is not well taken. We find that the State of Texas by original patent awarded to Fred P. James, assignee, Section 111, containing 640 acres on February 22, 1875. A resurvey of the said section in 1929 by Howard Trigg disclosed that Section 111 contained 686.1 acres or an excess of 46.1 acres and that the excess acreage was found to be on both the north-south and east-west sides of the section. On August 11, 1944, a deed of acquittance was executed by the State of Texas to Fred P. James, assignee, his heirs and assigns, to all of Section 111 covering 686.1 acres, which obviously covered the excess acreage along with the 640 acres. Such was done upon the application of appellant, filed in the general land office on June 7, 1944, under the provisions of Section 4, House Bill 9, Regular Session of the Forty-Sixth Legislature, the same being Article 5421c—1, Vernon's Annotated Civil Statutes. The said act authorizes any owner of a survey containing excess acreage, who desires to pay for such excess acreage, to apply for such and upon a proper showing a deed of acquittance shall be executed covering such land in the name of the original patentee or his heirs or assigns. This act did not repeal or modify the former law governing adverse possession.

Obviously all of the strip of land in question could not have been excess acreage in Section 111. But, be that as it may, Sec-

tion 111 was awarded to Fred P. James, appellee's predecessor in title in 1875. The strip of land in question was some time a few years later annexed to Section 112 and remained so thereafter, however the Howard Trigg survey in 1929 showed it was actually a part of Section 111. Although the fence was removed for a distance of less than one-half mile between the two sections, leaving an opening prior to 1931 for a time between them, the said fence had been rebuilt some time prior to 1931 enclosing the said strip of land again together with Section 112 and it remained so thereafter. Appellant observed continuously the use of the land in question by appellee for a period of time much longer than ten years before he asserted a claim to the land in question by filing this law suit.

█ The rule is well established that a right or title to land such as will sustain an action of trespass to try title can be lost by a proper claim of adverse possession. We believe appellant and his predecessors in title each had such an interest in the land in question as would have entitled either of them to have maintained an action of trespass to try title and that such a title may therefore be lost by a proper claim of adverse possession. Dutton v. Thompson, 85 Tex. 115, 19 S.W. 1026; Wingfield v. Smith, Tex.Civ.App., 241 S.W. 531; Whitaker v. McCarty, Tex.Com.App., 221 S.W. 945; Young v. Williams, Tex.Civ.App., 80 S.W.2d 399, 2 Tex.Jur. 32, Section 13. Appellant's first point of error is therefore overruled.

█ Appellant complains in his fifth point of error that the trial court erred in permitting the jury to consider any ten year period of time prior to November 28, 1944, in determining the period of adverse possession instead of limiting the jury to the period between 1931 and November 28, 1944.

Rule 277, Texas Rules of Civil Procedure, provides that when a case is submitted to a jury upon special issues, the trial court shall submit it upon special issues raised by the pleadings and the evidence. In the instant case the sole issue to be determined was that of limitation by adverse possession, consequently only one special issue was submitted to the jury, and i was submitted in the following language: 'Do you find from a preponderance of the evidence that the defendant, T. K. Winter, has held peaceable and adverse possession for ten consecutive years prior to November 28, 1944, of the 53.8 acres of land in Section No. 111, Block 2 G. H. & H. RR. Co. Survey in Hansford County, Texas, lying immediately south of the fence located on the south boundary line of the public highway running east and west across said section?" The jury answered the special issue in the affirmative.

Appellant objected at the proper time to submitting the issue for the reason there was no competent evidence of sufficient probative force to support an affirmative finding thereon and objected further to giving the issue in the language given for the reason that the issue failed to confine the jury to the period of time between 1931 and November 28, 1944, but authorized the jury to consider any period of time prior to November 28, 1944. He requested the trial court to correct the charge by limiting the time to the period of time suggested. The trial court considered his objections and request and overruled the same.

The record reveals that appellee pleaded in support of his claim of adverse possession that "on and prior to Jany. 1, 1932, he went into possession" of the strip of land in question and describes it by metes and bounds. He further pleaded that the land had been enclosed with a fence and that he had continuously occupied it and had peaceable, adverse possession of it for a period of more than ten years prior to the filing of the suit by appellant. There is no pleading found to support a claim of adverse possession prior to 1931.

During cross-examination of appellee, he was asked the following question: "When you took the deed from Mr. Spivey to 112 (which date the record shows was 1916), did you intend at that time to make any claim to any part of Section 111, Block 2?" Appellee's counsel objected to the question propounded for the following reason: "That any question concerning a claim asserted by the defendant to the land prior to the year 1931 is inadmissible be-

cause our claim of limitation begins with the year 1931."

The admission of appellee's counsel is conclusive upon him. Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d 246; 5 Tex.Jur. 453, Sec. 47; 17 Tex.Jur. 576, Sec. 240. However evidence had already been introduced showing that appellee had claimed and occupied the land in question together with Section 112 since he bought it in 1916 until he sold Section 112 in 1929 and that he had used it a part of the time prior to 1931 but it and Section 112 had not been completely enclosed by a fence during his occupancy of it prior to 1931. The evidence further shows that he had sold Section 112 in 1929 to Rowan who occupied it together with the strip of land in question for two years during which time Rowan had enclosed it all with a fence and he then sold it back to appellee in 1931. A careful examination of the testimony fails to reveal sufficient evidence of probative force to establish the fact that appellee occupied the land peaceably and adversely, cultivated, used and enjoyed it for a period of ten years prior to 1931. Or that he and Rowan together did so. Therefore the evidence would not support a claim of adverse possession under the law for any ten year period of time prior to 1931. Since neither the pleadings of appellee nor the evidence supported a claim of ten year adverse possession prior to 1931 and since appellee admitted through his counsel in open court that he made no claim of adverse possession prior to 1931, it was error for the trial court to frame and submit the issue in such a manner as to authorize the jury to consider the evidence pertaining to adverse possession prior to 1931 and even to find, if it so desired, that appellee had occupied the land in question adversely for a period of ten years prior to 1931. The trial court should have sustained appellant's objections to the charge with reference to the period of time authorized, granted his request to reframe the issue and confined the deliberations of the jury to the period of time between 1931 and November 28, 1944. The trial court had no way of knowing and we have no way of knowing what ten year period of time the jury found appellee occupied the land adversely and we have no way of knowing whether some or all of the jurors found such period to have been prior to 1931. If any or all of the jury did so find, it was error. In fact, it was error to permit the jury to consider any evidence that may have had any bearing on the question of adverse possession prior to 1931 in arriving at whatever period it found to be the period of adverse possession. Appellant's fifth point of error is therefore sustained.

Appellant complains in his second and third points of error that the evidence offered by appellee in support of his claim of adverse possession is not clear and satisfactory and that there is no competent evidence to the effect that appellee cultivated, used and enjoyed the land in question for a consecutive ten year period. In view of our disposition made of point five, the period of time in question must be confined to a time subsequent to 1931 and prior to the date appellant filed his petition in this case on November 28, 1944.

The elements essential to title by limitation have been so well settled in adjudicated cases that an extended discussion of them will not be given here. A person claiming title to land by virtue of ten year adverse possession has the burden of proving ten consecutive years of peaceable adverse possession and that he cultivated, used or enjoyed the same during that period of time and the proof must be clear and satisfactory. Moore v. Wooten, Tex. Com.App., 280 S.W. 742; West v. Mora, Tex.Civ.App., 138 S.W.2d 600. Presumptions to establish such a claim will not be indulged but such a claimant has the burden of proving every necessary or essential fact, in connection with his possession and claim, which go to make up or give him title by limitation. Durham v. Houston Oil Co. of Texas, Tex.Com.App., 222 S.W. 161; Thomas v. Ash, Tex.Civ.App., 199 S.W. 670; Bartee v. W. T. Carter & Bro., Tex. Civ.App., 100 S.W.2d 378. Article 5515, Vernon's Annotated Civil Statutes, provide that " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the

claim of another." The Commission of Appeals held in the case of W. T. Carter & Bro. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225, 1226, that "In order to maintain the defense under the ten years' statute of limitation, the defendant must prove 'actual, exclusive, continuous, visible, and notorious possession, distinct and hostile, for the full period of ten years.' 2 Tex.Jur. p. 12." The court held in the case of Monroe v. Lyons, Tex.Civ.App., 189 S.W.2d 90, 91, that "The essential elements upon which a title by limitation under the ten year statute can be perfected are use, claim and possession." It has likewise been many times held that a claimant by adverse possession for ten years must have entered upon the land and occupied it with the intention of claiming it as his own or have held it for himself and such must continue to be the nature of his possession. Houston Oil Co. of Texas v. Jones, 109 Tex. 89, 198 S.W. 290. The burden was upon appellee in this case to comply with the foregoing rules of law by proving that he claimed the land, that he had continuous, undisputed possession of the land and that he continuously cultivated, used or enjoyed the same for a period of ten consecutive years in order to establish title by adverse possession. Title by adverse possession may be perfected either by occupancy of the claimant or through occupancy by a tenant for claimant. If and when it is perfected through occupancy by a tenant, the tenant must make continuous use of it for claimant in such a way as to visit notice upon the public of possession and adverse claim.

We shall now review the relevant testimony as it is disclosed by the record in support of appellee's claim of limitation by adverse possession. Appellee testified in effect that he had claimed the land in question since 1931; that appellant had never occupied the land and that no one had tried to dispossess him of the land until this suit was filed; that after he got the land back from Rowan in 1931 he lived on it most of the time for four years and tried to farm it during the dust storms and it had been rented ever since; that he rented it out to Arthur Stavlo in 1935 and he occupied it four years; that thereafter Arthur's brother, Lloyd Stavlo, rented it for two years and thereafter Tom Dozier rented it and was still his tenant; that at no time had he surrendered possession of the land to anybody but his tenants; that in 1931 the improvements consisted of a house, an old granary, sheep shed, a small chicken house, two windmills, and a hog pasture all located on Section 112 about 600 feet south of the original north line of Section 112; that most of the improvements had since been moved off the premises except for the granary and an old corral; that he had a man living there all the time until 1947, farming all the east half "clear up to that section where it used to be"; that they farmed "as far west as the field was laid out at first" and plowed the north part "clear over to the fence". Appellee was asked by his counsel on direct examination "And you had a tenant there in charge of it and doing the farming every year?" To which inquiry he replied, "I had a man living there all the time until this year"(1947). Appellee further testified that he had claimed the land in question continuously since he bought it in 1916 except for the two years Rowan owned it from 1929 to 1931. More than once he testified that he had certainly claimed the land since 1931. On cross-examination he apparently became confused and testified that "it must have been as much as four years ago" that he made up his mind to claim the land in question but he was not sure about the time. He gave further testimony in the absence of the jury concerning the length of time he had claimed the land but we do not consider it necessary to discuss that testimony here. The witness O. V. Walker testified that the land was being plowed when Section 112 was sold to Rowan but the record shows that was in 1929. Witness E. C. Spivey testified that appellee "was there off and on" and had some stock on the land after he bought it back from Rowan and that he "had a tenant or someone on the land". This constitutes the pertinent testimony offered in support of limitation by adverse possession for the period of time in question.

It must be remembered that the strip of land in question was enclosed since 1931 with Section 112 and that a part of it was enclosed in a field together with a part of

'Section 112. The burden was upon appellee to prove limitation by adverse possession of the strip of land in question in compliance with the rules of law herein- above set out. However, he was not re- quired to prove a use of the land separately from the use of Section 112. Nevertheless the evidence given in support of appellee's claim of limitation by adverse possession is vague, indefinite and uncertain. In many instances the evidence given does not distin- guish the period of time to which he is confined from the period of time prior to 1931 and it is therefore confusing. At most the evidence does not do more than prove possession of the land in question for a period of more than ten years. In order to establish title by limitation, appellee had the burden of showing affirmatively the facts with reference to his use and occu- pancy of the land from which facts con- clusions of its continuous use and occupancy may be affirmatively deduced. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265; Bowles v. Watson, Tex.Civ.App., 245 S.W. 120; Hart v. Rochelle, Tex.Civ.App., 170 S.W.2d 245. It is our opinion that the evidence does not affirmatively prove continuous cul- tivation, use or enjoyment of the land clearly and satisfactorily enough to estab- lish limitation by adverse possession under the law. Appellant's second and third points of error are therefore sustained.

There are other assignments of error' about matters that will not likely occur at another trial. Therefore we shall not pass on the other assignments.

It appears that the facts have not been fully developed. Therefore because of the errors hereinabove shown the judgment of the trial court is reversed and the cause is remanded.

On Motions for Rehearing.

PER CURIAM.

We clarify that part of our original opinion in which we held that the evidence did not affirmatively prove continuous culti- vation, use or enjoyment of the land by appellee clearly and satisfactorily enough to establish limitation by adverse possession under the law by saying that it was our purpose to hold that the evidence offered was insufficient to establish such a claim and not that the evidence offered was in- competent.

Motions for rehearing filed by appellant and appellee have both been duly considered and they are both overruled.