**FOSTER et al. v. DUVAL COUNTY RANCH CO. et al.**

No. 12516.

Court of Civil Appeals of Texas.
San Antonio.

May 20, 1953.

Rehearing Denied June 17, 1953.

Dilworth & McKay, San Antonio, for appellants.

Otis Meredith, Houston, Perkins, Floyd & Davis, Alice, Earl A. Brown and C. B. Wallace, Dallas, William S. Clarke, Houston, for appellees.

POPE, Justice.

This is a non-jury trespass to try title suit and concerns a boundary question wherein the trial court awarded appellees certain lands inside their fence but outside of and adjoining their surveys. The lands were excess lands, included within the boundaries of appellants' survey but outside their fence. The case presents the questions, whether excess lands may be acquired by agreed boundary, acquiescence, estoppel or limitations; and, if so, whether the facts support such a judgment in this case.

All of the lands involved are a part of the French system of surveys made by A. M. French in 1880. At the time of the French survey, the lands to the east, known as the Dix survey, and the lands to the west, known as the Luckett survey, had already been surveyed. French in making his survey between those senior surveys made mistakes in measurements, with the result that his block and the surveys here involved contained excess lands, but no vacant lands. Duval County Ranch Co. v. Rogers, Tex.Civ.App., 150 S.W.2d 880 (see map. p. 882). The actual surface of the earth between the Luckett and Dix surveys was greater than French thought and was of a different configuration. The reason for this was that French made a mistake in measuring the east line of his survey with the result that instead of the east line and west line being equal, the east line of the French survey was actually shorter than the west line. He supposed that he could lay in a system of surveys having an approximately true east to west boundary line; but when it was discovered that the French system contained excess lands, the apportionment of the excess acreage resulted in a dislocation of the east to west lines.

Appellants are the heirs of J. R. Foster and wife, the original patentees of Survey 200 of the French surveys. They presently own that survey, and the Duval County Ranch Company (hereafter called Ranch) and others own surrounding lands on the north, west and south sides of Survey 200, all being a part of the French block. About 126.72 acres of land in Survey 200 and 2.92 acres of land in Survey 199 lie outside the Foster fence, and that outside land, situated on the south and west of Survey 200, comprises the subject of this dispute. Those lands are within the Ranch fences and have been continuously since 1909.

French prepared his original field notes to Surveys 199, 200, 201 and 202 in 1880, as a result of an office survey. Those field notes make the south line of Survey 200 and the north line of Surveys 201 and 202 coterminous and common. In 1904 J. R. Foster, appellants' predecessor, made application to purchase Survey 200, and in 1913 the survey was patented to him under those field notes, as containing 640 acres.

In 1938 certain persons, not here involved, precipitated a land suit when they sought to purchase or lease from the State certain lands within the French block, on the grounds that they constituted a vacancy. The lands here involved were among those claimed to constitute the vacancy. In the Duval County Ranch Company case, cited above, it was decided that those lands constituted an excess but not a vacancy. After that suit was concluded, a resurvey of Survey 200 revealed that it contained 764.97 acres, rather than 640 acres. Foster, the owner, availed himself of the provisions of Art. 5421c–1, Vernon's Ann. Civ.Stats., by causing corrected field notes to be filed for Survey 200 and paying for the excess; and on August 29, 1945, he received a deed of acquittance from the Commissioner of the General Land office. Survey 199, immediately north of the Survey 200, was owned by the Ranch, and on March 12, 1942, the Ranch had obtained a deed of acquittance by paying for an excess of 33.23 acres over the 640 acres recited in the original field notes and patent for that survey. The Ranch also owned Surveys 201 and 202, on the south boundary of Survey 200, and in 1948 the Ranch obtained deeds of acquittance to those surveys. The resurvey of Surveys 201 and 202 placed the true north line of those surveys along the true south line of Survey 200.

After all these transactions were completed, this dispute arose over the ownership of lands that are within the resurvey field notes of Survey 200 but outside of the Foster fence line and included within the Ranch pasture and fence lines. After deeds of acquittance to both the Foster heirs and the Ranch were delivered, it became apparent that the Foster deed of acquittance included the 129.64 disputed acres within its description, but that those lands had been outside the fence for about forty years.

The following map illustrates the situation: ter heirs acquiesced in and recognized the fence line as the boundary, and (3) the

Survey 260 (Ranch)

Survey 199 (Ranch)

Not Disputed

Survey 262 (Ranch)

Survey 200 (Foster)

Survey 270 (Foster)

Survey 106 (Ranch)

Survey 202 (Ranch)

Survey 201 (Ranch)

Survey 206

Hatched line is disputed area.
Barbed line shows enclosure for Survey 200 since 1909. It follows calls of deed before deeds of acquittance and without excess apportioned.
Heavy line shows true boundary for Survey 200 and includes apportioned excess.

The fence line on the accompanying map lies along the original calls by French for Survey 200. The heavy line shows the boundaries as corrected by the resurvey to include the excess lands of Survey 200. From the sketch it is apparent that the true boundaries to the Ranch lands, based on the deeds of acquittance it accepted, do not extend to the fence line, yet the Ranch has the disputed lands within its pasture. The Foster heirs showed a record title to all the disputed lands.

The Ranch defended its claim to the disputed acreage that was inside its fence lines and won a favorable judgment which found as facts that: (1) appellants' and appellees' predecessors made a boundary agreement fixing the fence line as the line between the adjoining lands; (2) the Foster heirs are legally estopped to claim lands outside their fence line.

The Foster heirs assert that the errors in the original French survey were not discovered until the trial of Duval County Ranch Company v. Rogers, finally decided in 1941, and that prior to that time none of the parties knew that the surveys contained excess lands, and that they, the Foster heirs, relied upon the original calls of Survey 200 as a correct survey. The Foster heirs, appellants, argue that affirmative claims and defenses asserted by the Ranch will not lie, because (1) the State had not yet divested itself of title to the excess lands, (2) the Ranch, by filing corrected surveys and by the acceptance of patents and deeds of acquittance to the corrected surveys, lost all right and claim

to lands lying outside the boundaries of such surveys, and (3) the various affirmative claims and defenses asserted by the Ranch are not factually proved.

We overrule, as did the trial court, appellants' point that the State had not divested itself of title to the excess lands. This was not a vacancy suit nor a claim against the State. Survey 200 was surveyed by French, and later patented to appellants' predecessors and was segregated, including its excess, from the public domain. The State divested itself of these lands even though the State could still collect for the extra lands in the surveys. That excess lands are unsold lands that remain a part of the public domain was unsuccessfully urged in Cook v. Winter, Tex. Civ.App., 207 S.W.2d 145, 147. The limitation claim of the adjoining survey owner was there upheld as to excess lands as against the contention that excess lands did not pass out of the State until the issuance of a deed of acquittance. The court also stated that the law authorizing an acquittance "did not repeal or modify the former law governing adverse possession." And with respect to the limitation claim against excess lands, the Court stated that an adverse claimant may mature title, saying:

"The rule is well established that a right or title to land such as will sustain an action of trespass to try title can be lost by a proper claim of adverse possession. We believe appellant and his predecessors in title each had such an interest in the land in question as would have entitled either of them to have maintained an action of trespass to try title and that such a title may therefore be lost by a proper claim of adverse possession. Dutton v. Thompson, 85 Tex. 115, 19 S.W. 1026; Wingfield v. Smith, Tex.Civ.App., 241 S.W. 531; Whitaker v. McCarty, Tex. Com.App., 221 S.W. 945; Young v. Williams, Tex.Civ.App., 80 S.W.2d 399, 2 Tex.Jur. 32, section 13. Appellant's first point of error is therefore overruled."

Davis v. Morley, Tex.Civ.App., 169 S.W. 2d 561, held in effect, simply stated, that the Land Commissioner could not patent lands to one person that were already sold to another. In that case the excess lands were regarded by the court as sold lands. And in Willoughby v. Long, Tex.Civ.App., 69 S.W. 646, where there was an excess but not a vacancy, and where also the sale by the State was "clearly by the acre," the court held that title to all the land, including the excess, passed to the original grantee, subject to attack only by the State. See also Maxey v. O'Connor, 23 Tex. 234. Excess lands are not vacant lands, and are treated by the courts as sold lands segregated from the public domain. For that reason, appellees' affirmative defenses and claims may be asserted.

The authorities relied upon by appellants in support of their point, that appellees' defenses are inapplicable to excess lands the same as if they were vacant lands, do not support that principle. In Findlay v. State, 113 Tex. 30, 250 S.W. 651, by constitutional authority, three million acres of land, no more, were agreed upon as consideration for the construction of the State capitol building. Mistakes were made in the survey of the lands the contractor received, with the result that a material excess was later discovered. The State recovered the excess because constitutional and statutory limitations on the State contract empowered the State to trade only a stated number of acres. Texas Const. (1876), Art. 16, § 57, Vernon's Ann.St.; Texas Laws, 1879, ch. 13, p. 9. And in Wright v. Gale, 104 Tex. 450, 140 S.W. 91, 94, 143 S.W. 141, the Supreme Court held that a sale of a survey containing excess lands gave the purchaser and those holding under him certain rights whereby he could perfect his imperfect title. The Court said, with reference to the purchaser in that case, that he *"gets the entire excess within the limits of his purchase* * * *."* We do not construe that language to be a holding that the State never separated the excess from the public domain.

Thomas v. Cline, 135 S.W.2d 1018, 1020, decided by a Court of Civil Appeals, is a trespass case and is the strongest expression of appellants' contention that

claims to excess lands are futile because they belong to the State. While an examination of the authorities cited in that opinion shows that the Court erroneously equated the rules with reference to vacant lands with the problem of excess lands, we do not place our decision upon distinctions. Thomas v. Cline, by its general language, is not in line with other decisions, and is contrary to holdings of the Supreme Court. We do not consider it a correct statement of the law. We conclude, therefore, that excess lands are owned by a vendee in the sense that anyone owns lands that have not yet been paid for.

The next point presented is whether the acceptance of deeds of acquittance by the Ranch estopped it from asserting affirmative claims to lands beyond the description of those deeds. The Ranch obtained a deed of acquittance to Survey 199 in 1942; appellants, the Fosters, obtained a deed of acquittance to Survey 200 in 1945; and the Ranch then obtained deeds of acquittance to Surveys 201 and 202 in 1948. An examination of the accompanying sketch shows that the true north lines of Surveys 201 and 202 and the true east line of Survey 262, as described in the deeds of acquittance, do not coincide with the location of the fence line. The true boundary of Fosters' Survey 200, as described in the deeds of acquittance to Surveys 201 and 202, coincides with and is adjacent to the boundaries of surrounding Ranch lands on the west and south. The strip between the fence and the true boundary as reflected by the deeds of acquittance is the disputed area. A strip of excess on the far north, between Surveys 199 and 200, is not here in dispute.

The Ranch, in filing corrected surveys and in accepting patents and deeds of acquittance, did not become estopped to assert affirmative claims and defenses to lands beyond the description of its patents and deeds of. acquittance, because those affirmative claims and defenses to the disputed area were not grounded upon record title. The Ranch claimed the disputed area, not by reason of a record title but by reason of boundary agreement, acquiescence and recognition of boundary, estop-

pel and limitations. Those claims are asserted to have matured title to the disputed area in the Ranch in spite of the true boundary and the record title.

Appellants, the Fosters, rely upon the law as stated in many decisions which hold that upon filing corrected field notes and the issuance of a patent, there is a cancellation of the original field notes and a nullification of the title under those field notes. Miller v. Yates, Tex.Civ.App., 15 S.W.2d 730, affirmed, 122 Tex. 435, 61 S.W.2d 767, collects the several authorities so holding. See also Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569; Holmes v. Yates, 122 Tex. 428, 61 S.W.2d 771; Perry v. Siler, Tex.Civ.App., 97 S.W.2d 291. But that rule means that one can not claim under incorrect field notes when correct ones have been substituted. One who relies upon his record title from the State must prove that title and it is limited by the boundaries shown in the corrected field notes. A survey must be established by the calls of its own field notes. Thompson v. Langdon, 87 Tex. 254, 285 S.W. 931, 933, 935.

However, one who claims title to land which is not vacant land is not restricted to a claim by record title as limited by the field notes in his patent. Appellants' authorities are cases which did not present any issues to the court other than record title. The Ranch in this case does not rely upon record title and field notes as corrected. The Ranch does not claim the disputed area in Survey 200 under or by reason of patents it received for Surveys 201 and 202. It claims the disputed area in Survey 200 by reason of affirmative claims entirely apart from its title to the adjoining land surveys. Cook v. Winter, Tex.Civ.App., 207 S.W.2d 145, in a factual situation uniquely similar to those of this case, in our opinion, supports the trial court's judgment that the Ranch may affirmatively claim lands beyond the field notes of its deeds of acquittance, but inside its fence. And the acceptance of corrected field notes by the Fosters to the adjoining survey, under the authority of Article 5421c–1, Vernon's Ann.Civ.Stats., inured to the benefit of the owners, whoever they may be. Cook v. Winter, supra.

And, finally, the evidence supports the trial court's findings that appellants' and appellees' predecessors made a parol boundary agreement, and also that the boundary was fixed by acquiescence and recognition and estoppel. We do not consider discussion with reference to the claim of five year limitation title necessary, but are of the opinion that the record does not support that claim.

Appellants challenge the sufficiency of the proof because of the failure to prove a dispute between appellants' and appellees' predecessors as to the boundary. There was no proof of a quarrel, controversy, or ill-feeling between the adjoining owners who erected the fence. They were good neighbors and helpful to each other in keeping their cattle in the right pasture. But there was doubt and uncertainty and no witnesses except those called by appellees testified. Their undisputed proof showed that from 1909 until this suit was filed in 1951, the fence line had been established by a strong fence; that prior to 1909 the lines and corners of the Foster Survey 200 were unmarked and unknown, and surrounded by Ranch lands then belonging to persons known as Smith & Corkill. Representatives for Foster and for Smith & Corkill were present when the lines were run and staked by a surveyor. After the fence was erected, Foster took his cattle out of Smith & Corkill's pasture, and they took theirs from Foster's enclosure. All persons thereafter recognized the fence as the boundary. As J. M. Corkill, the manager for Smith & Corkill when the fence was built, expressed it: "It was all agreeable. * * * There wasn't any trouble about the line or about the fence. It was agreeable to both Mr. Foster and the ranch to fence it off." J. R. Foster, the appellants' predecessor, died in 1946, at least five years after it was decided that there was an excess in his Survey 200, and that it was located beyond and outside of his fence. Nevertheless, he never made any claim beyond the fence line as marked and staked back in 1909, nor did his wife and children, until six years later, in 1952. In fact, in 1938, at a hearing in the General Land Office with reference to mineral applications by persons who claimed the excess was a vacancy, Foster asserted that he owned no part of the land south of his fence line. Survey 200, as well as the other surveys in the French block, were office surveys, and up to the time of the above boundary arrangement the boundary of Survey 200 and the adjoining surveys was never marked on the ground—and it was unknown.

To require appellees to prove a dispute would require more than does the law. The proof showed doubt and uncertainty on the part of adjoining landowning friends, and strong inferences arise from the long-standing conduct that commenced at a time when both adjoining owners had representatives present watching what was being done, and continued unchanged and unchallenged until several years after it was judicially determined that the fence was off the true line. Appellees have met the test and there was an agreed boundary. As stated by the Supreme Court in Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59, 152 S.W.2d 711, 714:

> "When there is uncertainty, doubt or dispute as to where the true division line between the lands of the parties may be, they may fix it by parol agreement, which will be mutually binding upon them, even though they were mistaken as to the true location of the line. This is true whether the mistake be of a matter of fact or of law. The existence of uncertainty, doubt or dispute is essential to the validity of such agreement. Actual dispute, however, between the parties is not necessary. It is enough that the location of the line has not been definitely established and is doubtful or uncertain. It is generally held that such agreement to be effective and binding must be executed by the parties, that is, by the erection of physical monuments on the agreed line or by otherwise marking the line, by actual possession or use to the line or by the improvement or development of the property with reference to the line. Agreement fixing a boundary may be proven as well by

acts and conduct of the parties as by express statement. In this state it is not necessary 'in order to give the agreement vitality, that it should be supported by acquiescence or acts from which an estoppel may spring.' Lecomte v. Toudouze, 82 Tex. 208, 214 S.W. 1047, 1050, 27 Am.St.Rep. 870. Acquiescence in a line over a period of several years is evidence from which it may be inferred that the parties had agreed to the line, * * *."

Without repeating them, other authorities accord with that rule and hold that "where parties are in doubt as to where the true division line between them of their lands may be, they may fix it by parol agreement, which would be mutually binding upon them, even though they were mistaken as to its true locality." Harn v. Smith, 79 Tex. 310, 15 S.W. 240, 241, 23 Am.St.Rep. 340; Executrix of W. W. Browning Estate v. Atkinson, 46 Tex. 605; Gulf Oil Corporation v. Amazon Petroleum Corporation, Tex.Civ.App., 152 S.W. 2d 902; Shelor v. Humble Oil & Refining Company, Tex.Civ.App., 103 S.W.2d 207; Anderson v. Atlantic Producing Co., Tex. Civ.App., 83 S.W.2d 418; Moss v. Yager, Tex.Civ.App., 23 S.W.2d 396; King v. Mitchell, 1 Tex.Civ.App. 701, 21 S.W. 50.

The judgment is affirmed.