**Opinion filed August 30, 2018**



### In The

# Eleventh Court of Appeals

_____

## No. 11-16-00047-CV

_____

**DAVID LAWRENCE "LARRY" GLASS, WILLENE KEY GLASS BOGER, LACY CREEK RANCHES, LLC, AND GLASS PROPERTIES, LTD., Appellants**

## V.

**FRANK GLASS FAMILY PARTNERSHIP, LTD., FRANK GLASS, AND CAROL A. STROTHER, Appellees**

**On Appeal from the 118th District Court**

**Glasscock County, Texas**

**Trial Court Cause No. 1714**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment entered to resolve a boundary dispute among family members over 32.1 acres of land in Glasscock County. Appellants own Section 2, Block 32, Township 5 South, T & P Ry. Co. Survey, and Appellees own Section 3 of the same block. These sections are located beside each

other sharing a common boundary on the eastern border of Section 3 and the western border of Section 2. The 32.1-acre tract that is the subject of this suit is located at the north end of this common boundary line—north of State Highway 158, which crosses Sections 2 and 3. The question before us is whether the 32.1-acre tract is located in Section 3 or in Section 2. The trial court determined that, as a matter of law, the tract is located in Section 3. Accordingly, the trial court awarded the 32.1-acre tract to Appellees. We affirm.

*Background Facts*

In light of the trial court's determination that the 32.1-acre tract lies within Section 3, we direct our attention to Section 3. Murray Harris, a deputy surveyor for the Texas and Pacific Railway Company, originally surveyed Section[1] 3 in 1876. Harris's field notes were filed with the State of Texas in 1876, and a patent was issued by the State for Section 3 in 1884.

Sections 2 and 3 were subsequently acquired by J.L. and Mattie J. Glass, along with a large amount of other land located in Glasscock and Sterling Counties. Thus, J.L. and Mattie J. Glass and their probate estates are the common source of title for both Appellants and Appellees. J.L. Glass died in 1947, and Mattie J. Glass died in 1954. Prior to their deaths, a boundary dispute arose with a neighboring property owner. In order to resolve the dispute, a surveyor named Claude Beckett was hired to survey Block 32. Appellees assert that an oral agreement was reached between J.L. Glass and the neighbor to accept Beckett's survey as a resolution of the property dispute.

In 1954, M.D. Rawls completed another survey of Section 3. Appellees assert that Rawls's survey confirmed the survey lines of the Beckett survey. Rawls filed

---

[1]Some of the documents filed with the General Land Office refer to the "sections" as "surveys." For example, "Section No. 3" is called "Survey No. 3" in Harris's original field notes.

corrected field notes in 1955 for Section 3 with the General Land Office, indicating that Section 3 contained excess acreage. The independent executors of the Estates of J.L. and Mattie J. Glass also filed an Application to Purchase Excess Acreage with the General Land Office in 1955. The General Land Office offered to sell the excess acreage in Section 3 to the executors for the cost of $3.33 an acre. The executors accepted the terms of purchase by paying the requested sum and executing an Acceptance of Terms of Sale of Excess Acreage.

In 1987, the General Land Office issued a Deed of Acquittance for Section 3. A recital in the deed provided that "it has been determined by corrected field notes approved and filed in the General Land Office" that the survey for Section 3 contains excess acreage. The deed also recited that the independent executors of the Estates of J.L. and Mattie J. Glass had purchased the excess acreage. The deed then "acquitted" a tract of property as Section 3, which was described by a metes and bounds description. The metes and bounds description in the Deed of Acquittance was the same as the metes and bounds description in Rawls's corrected field notes. In the trial court's final summary judgment, it determined that Section 3 was comprised of the property described by the same metes and bounds description as the Deed of Acquittance and Rawls's corrected field notes. The 32.1-acre tract lies within this metes and bounds description.

The dispute giving rise to the underlying lawsuit arose when Appellant Larry Glass filed an Affidavit of Adverse Possession in the public deed records for the 32.1-acre tract. Filing on behalf of himself and his sister, Willene Key Glass Boger, Larry Glass asserted that he and his family claimed adverse possession of the tract based on an existing ranch fence. In response, Appellees filed suit against Appellants asserting claims for trespass to try title, declaratory judgment, breach of lease contracts, slander of title, and suit to quiet title.

With respect to the breach of lease claim, Larry Glass leased Section 3 from Appellees Frank Glass and Carol Strother (along with other sections not subject to this appeal) for ranching and grazing purposes. The term of the last lease agreement expired on March 31, 2014. Larry Glass filed the Affidavit of Adverse Possession in October 2014. Appellees asserted that Larry Glass breached the lease by failing to return all of the leased property at the end of the lease term by filing the Affidavit of Adverse Possession.

Appellees filed a traditional motion for summary judgment seeking judgment on all of the causes of action asserted in their petition. Appellees primarily relied upon Rawls's corrected field notes, the General Land Office's acceptance of the corrected field notes, the Deed of Acquittance issued by the General Land Office, and the actions of Appellants' predecessors-in-interest with respect to their recognition and acceptance of Rawls's survey.

In their response to Appellees' motion for summary judgment, Appellants asserted that the 32.1-acre tract was originally located in Section 2 of Harris's 1876 survey. Appellants supported this contention with an affidavit from another surveyor, Thomas J. Houston. Houston asserted in his affidavit that he had compared Harris's original field notes from 1876 with Rawls's corrected field notes from 1954. Houston averred as follows: "I believe there is a conflict between the original and corrected positions for Surveys 2 and 3. The east line of Survey 3 per Rawls Corrected Field Notes is over 1000 feet east of the original and patented west line of Survey 2."[2] Houston concluded by stating that the 32.1-acre tract lies between the original west line of Survey 2 and the corrected east line of Survey 3.

---

[2]See previous footnote.

On appeal, Appellants rely upon Houston's position that the 32.1-acre tract is in the original survey for Section 2.

*Analysis*

Appellants raise five issues on appeal. The first four issues challenge the summary judgment entered by the trial court in favor of Appellees. Appellants' fifth issue is in response to Appellees' cross-appeal. Appellees assert in a single issue that the trial court abused its discretion by failing to award Appellees their attorney's fees.

A grant of summary judgment is reviewed de novo on appeal. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). When the trial court's order fails to specify the grounds for its summary judgment, we will affirm if any of the theories are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional motion for summary judgment, we review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Appellants contend in their first issue that the trial court erred in granting summary judgment to Appellees because Appellees failed to prove a regular chain of conveyances to the 32.1-acre tract as a part of Section 2. Appellants assert in their second issue that the trial court erred if it relied upon the Deed of Acquittance for granting Appellees' motion for summary judgment. Both of these contentions are premised on Houston's contention that the 32.1-acre tract, per Harris's original field notes, was located in Section 2. Appellants assert that Rawls's corrected field notes for Section 3 and the Deed of Acquittance from the General Land Office based upon the corrected field notes were ineffectual to alter the boundaries of Section 3 to include the 32.1-acre tract. We disagree.

Appellants' claims based on Harris's original field notes are an attempt to establish record title to the 32.1-acre tract. However, Harris's field notes have essentially been cancelled by the State by the General Land Office's acceptance of Rawls's corrected field notes and the issuance of the Deed of Acquittance. Rawls's corrected field notes were filed by Appellants' predecessor-in-interest, the Estates of J.L. and Mattie J. Glass at a time when Sections 2 and 3 were owned by the Estates. In this regard, Larry Glass's father was one of the executors of the estates that sought the excess acreage for Section 3 from the General Land Office. Larry Glass inherited Section 2 from his father.

The Corpus Christi Court of Appeals addressed a similar contention in *Wofford v. Miller*, 381 S.W.2d 640 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.). The appellant in *Wofford* claimed that property extended to a line depicted on an earlier survey. 381 S.W.2d at 646. However, the earlier survey had been "cancelled and corrected" and a patent issued by the State on corrected field notes. The court held that the acceptance by the appellant's predecessor-in-interest of a patent under the corrected field notes had the effect of him and his assignees "losing

6

all right to any additional area embraced in the prior field notes." *Id.* With respect to record title, the cancellation of the original field notes and issuance of a deed based on the corrected field notes from the State results in a nullification of the record title under the original field notes. *Foster v. Duval Cty. Ranch Co.*, 260 S.W.2d 103, 108 (Tex. Civ. App.—San Antonio 1953, writ ref'd n.r.e.) (citing *Miller v. Yates*, 15 S.W.2d 730 (Tex. Civ. App.—El Paso, 1929), *aff'd*, 61 S.W.2d 767 (Tex. 1933)).

Thus, there is evidence of a chain of title in favor of Appellees, as owners of Section 3, to the 32.1-acre tract because the tract is included within the metes and bounds description of the corrected field notes and the Deed of Acquittance. For the same reason, there is no record title in favor of Appellants for the 32.1-acre tract. Accordingly, we overrule Appellants' first and second issues. In light of our disposition, we do not reach Appellants' third and fourth issues.

Appellees assert in their cross-issue that the trial court abused its discretion by failing to award Appellees their attorney's fees. Appellees sought attorney's fees on three grounds: (1) the parties' grazing lease provided for the recovery of attorney's fees; (2) Appellants' claim of adverse possession was made in bad faith; and (3) the Declaratory Judgments Act allows for a recovery of attorney's fees that are just and equitable.

"As a general rule, litigants in Texas are responsible for their own attorney's fees and expenses in litigation." *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012). A court may award attorney's fees only when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to seek an award of attorney's fees is a question of law that we review de novo. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

With respect to the attorney-fee provision contained in the grazing lease, Appellees assert that an award of attorney's fees is mandatory under the contract. The Civil Practice and Remedies Code provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015). To obtain an award of attorney's fees under Section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). However, "[p]arties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). When parties include such a provision in a contract, the language of the contract controls, rather than the language of the statute. *Id.* at 654–56.

Appellees did not seek an award of mandatory attorney's fees pursuant to the grazing lease in either their petition or their motion for summary judgment. Instead, Appellees only sought a recovery of attorney's fees under Chapter 38. A party who pleads for attorney's fees only under Chapter 38 waives its claim for attorney's fees under a contractual provision. *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 61 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Intercontinental Grp. P'ship*, 295 S.W.3d at 659)).

The trial court's summary judgment makes no mention of the grazing lease that provides the basis for Appellees' claim for breach of contract. Additionally, the trial court did not award Appellees any damages that resulted from the alleged breach of the grazing lease. Accordingly, Appellees were not entitled to a recovery of attorney's fees for their breach of contract claim. *See Green Int'l, Inc.*, 951 S.W.2d at 390.

With respect to Appellees' claim for attorney's fees arising from Appellants' claim of adverse possession, Section 16.034 of the Texas Civil Practice and Remedies Code provides that an award is mandatory in a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession if the court finds that the claim of adverse possession was groundless and made in bad faith. CIV. PRAC. & REM. § 16.034(a)(1) (West Supp. 2017). In the absence of a finding of groundlessness and bad faith, an award of attorney's fees under the statute is discretionary. *Id.* § 16.034(a)(2); *see NAC Tex Hotel Co. v. Greak*, 481 S.W.3d 327, 335 (Tex. App.—Tyler 2015, no pet.). Appellees did not obtain a determination from the trial court that Appellants' claim of adverse possession was groundless and made in bad faith. In the absence of this determination, Appellees were not entitled to mandatory attorney's fees under Section 16.034.

Appellants assert that a cause of action for trespass to try title is the only viable cause of action for a boundary dispute. They cite *Martin v. Amerman*, 133 S.W.3d 262, 263 (Tex. 2004), in support of this proposition. In making this contention, Appellants are asserting that a declaratory judgment action is an improper cause of action for this boundary dispute. We disagree. After the Texas Supreme Court's holding in *Martin*, the Texas Legislature added subsection (c) to Section 37.004 of the Texas Civil Practice and Remedies Code. CIV. PRAC. & REM. § 37.004(c). This subsection now specifically permits a declaratory judgment action "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." *Id.*; *see Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.). Accordingly, Appellees were entitled to assert a claim for declaratory judgment under the Act as well as a claim for attorney's fees under the Act.

The Declaratory Judgments Act provides that, in any proceeding under the Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." CIV. PRAC. & REM. § 37.009. Appellees acknowledge that the recovery of attorney's fees under the Declaratory Judgments Act is discretionary. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("The Declaratory Judgments Act does not require an award of attorney fees to the prevailing party. Rather, it provides that the court 'may' award attorney fees. The statute thus affords the trial court a measure of discretion in deciding whether to award attorney fees or not."). Thus, an award or non-award of attorney's fees under the Act is reviewed for an abuse of discretion. *Id.* at 21.

Accordingly, we direct our attention to Appellees' contention that the trial court abused its discretion by failing to award attorney's fees under Section 16.034 and the Declaratory Judgments Act. A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it acts without reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In conducting an abuse of discretion review, an appellate court views the evidence in the light most favorable to the trial court's ruling and indulges every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Determining whether to award attorney's fees is a question committed to the trial court's sound discretion because of the nature of the issue. *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 161–62 (Tex. 2004). Whether it is equitable and just to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Id.* at 162; *see Approach Res. I, L.P. v. Clayton*, 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.). As was the case in *Ridge Oil*, there is no indication in the record that the

trial court's decision to not award attorney's fees was arbitrary or unreasonable. Accordingly, the trial court did not abuse its discretion. We overrule Appellees' cross-issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

August 30, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.